518 So.2d 664 (1988)
Earl Roy COOPER and Roy Blane Cooper
v.
Terry R. COOPER.
No. 57218.
Supreme Court of Mississippi.
January 6, 1988.
*665 James W. Burgoon, Jr., Fraiser, Burgoon & Abraham, Greenwood, for appellants.
Falton O. Mason, Jr., Greenwood, for appellee.
Before HAWKINS, P.J., and PRATHER and ZUCCARO, JJ.
HAWKINS, Presiding Justice, for the Court:
Earl Roy Cooper appeals from a final decree of the chancery court of Montgomery County granting his wife Terry R. Cooper a divorce on the ground of habitual cruel and inhuman treatment, together with ancillary relief of alimony and a lien impressment. The only issue we address on this appeal is whether Mrs. Cooper made a case of habitual cruel and inhuman treatment.
Because Mrs. Cooper failed to offer sufficient evidence to support her claim, we reverse and render judgment for Cooper.

FACTS
Mrs. Cooper filed her complaint against Cooper for a divorce in the chancery court of Montgomery County on March 1, 1985. They married November 25, 1982, when Cooper was in the county jail in Winona under a felony sentence. Mrs. Cooper, age 32, had two children by a previous marriage, and Cooper, age 54, had a grown son, Roy Blane Cooper, practicing veterinary medicine in Greenwood.
Beginning in 1980, they had lived together for approximately two years prior to their marriage. In Cooper's divorce settlement in his first marriage, he had conveyed his realty and business properties to his son. These properties were heavily mortgaged, with the father and son personally liable under the promissory notes, which were renewed periodically.
Although title to the properties was in the name of the son, Blane, Mrs. Cooper managed the business properties in Winona, and testified she handled hunting leases of rural land, and the closing of a substantial timber sale.
Mrs. Cooper testified that she made continued efforts to secure Cooper's release from prison, and he was eventually paroled in October, 1984. The couple promptly moved to Texas.
They returned to Mississippi for a visit in December, 1984, and stopped by Blane Cooper's clinic in Greenwood. According to Mrs. Cooper, she and her husband got into an argument over some dogs they had left with Blane Cooper, that he had given away. This upset her children. She said the argument "escalated," and she went to her mother's home in Attala County. She telephoned a Winona attorney about her marital difficulty, who apparently advised her to await developments.
The next morning Mrs. Cooper telephoned an Internal Revenue Agent in Texas named Bill Gibson, who wanted to know where Cooper was. She gave him Cooper's location, and also told him that she might be returning to Mississippi permanently if she and Cooper could not work their marital difficulties out. She testified she later telephoned Gibson to tell him she planned to return to Texas, and Gibson's wife answered the call. The agent's wife told Mrs. *666 Cooper that Gibson was on his way to Mississippi to see her.
According to Mrs. Cooper, Gibson and two more agents came to Kosciusko, where Gibson informed her that her husband planned to have her murdered.
She further testified that because of that conversation she gave these agents information they needed to arrest her husband. Thereafter, some Internal Revenue Agents from Jackson came and picked her up, transported her to Memphis, where she stayed for five days, and they then returned to Texas.
She said that when she got to her Texas apartment, all the jewelry, coins and etchings were missing. She then returned to Memphis, thence to Mississippi.
Mrs. Cooper gave as statutory grounds for divorce irreconcilable differences, Cooper's sentence to the penitentiary, and habitual cruel and inhuman treatment. No effort was made to substantiate either of the first two statutory causes, however, and they clearly do not apply to this case. In her complaint she also sought the return of her jewelry, alimony, and that the sale of Cooper's properties to his son be set aside as fraudulent, and a lien be impressed upon them to secure payment of alimony.
At trial the only proof offered by Mrs. Cooper of the alleged plot of her husband to have her murdered was the conversation she had with the Internal Revenue Service agents in Kosciusko. The chancellor sustained Cooper's objection to this testimony as hearsay.
When Cooper testified he denied any plot or intent whatever to kill his wife. At the time of trial proceedings in November, 1985, Cooper was serving time in the State penitentiary in Parchman under two five-year sentences, on which he had served approximately three and one-half years, according to him. Also, he was facing, upon his release from the State Department of Corrections, a nine-year Federal prison sentence and a $21,000 fine.
Cooper said that the argument between himself and his wife arose over a lock box in Kosciusko. He also testified that he had attempted to work out a reconciliation with his wife, without success.
At the conclusion of the trial the chancellor awarded Mrs. Cooper a divorce on the ground of habitual cruel and inhuman treatment, lump sum alimony of $72,000 payable over four years at $18,000 a year. The final decree also provided:
The lump sum alimony award of $72,000 to be secured by a lien and to be enrolled as a judgment on any and all property, real and personal, in the name of Earl Roy Cooper, Roy Blane Cooper and Cooper Enterprises, located and situated in Montgomery County, Mississippi.
Cooper has appealed.

LAW
Cooper has assigned as error on appeal that Mrs. Cooper failed to prove her claim of habitual cruel and inhuman treatment, that Mrs. Cooper was not entitled to any alimony, and the chancellor erred in impressing a lien on the Cooper properties. In view of our disposition of the first issue, we do not reach the merits of any other issue in this case.
There can be no doubt that Mrs. Cooper had every reason to be gravely alarmed when she was informed by an Internal Revenue Service agent that her husband planned to murder her, to promptly leave him and seek personal safety for herself. If she contemplated using this as a basis for sustaining a charge of habitual cruel and inhuman treatment in a chancery court, however, she had the responsibility of offering more evidence than the conversation she had with Gibson. The chancellor was not warranted in granting a divorce on this ground on the evidence before him. Chambers v. Chambers, 213 Miss. 71, 56 So.2d 33 (1951).
There is nothing in this record to show any attempt to ferret out the sources or gain further information about this murder plot. Gibson was never offered as a witness, and indeed we cannot know whether his testimony would have been any more than hearsay itself.
*667 There being no substantial evidence to support Mrs. Cooper's allegations of habitual cruel and inhuman treatment, the chancellor erred in granting her a divorce, together with alimony and a lien on the Cooper properties. There is no need to address the merits of Mrs. Cooper's entitlement to alimony or a lien on the Cooper properties, these issues not being reached.
The final decree in this case granting Mrs. Cooper a divorce and other relief is, therefore, reversed and judgment rendered for Cooper.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., DAN LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.