# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00726-SCT

*MICHAEL W. LAMBERT*

*v.*

*SHEILA K. LAMBERT*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/96 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LISA B. MILNER |
| | TAMMY D. MIDDLETON |
| ATTORNEY FOR APPELLEE: | RANDY A. CLARK |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 10/9/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/30/97 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

## SUMMARY

Michael W. Lambert ("Michael") appealed from a decision of the Chancery Court of the First Judicial District of Hinds County entering a divorce decree in favor of Sheila K. Lambert ("Sheila") based upon the grounds of habitual cruel and inhuman treatment. The chancellor also ordered the marital home to be sold and the equity split between the parties, the marital debts to be paid by Sheila, that Sheila receive an award of lump sum alimony of $7,000 to be used toward payment of the debts, and the parties to keep the personalty already in their respective possession. Aggrieved by the order of the chancery court, Michael assigns the following as error:

> **I. THE CHANCELLOR ERRED IN GRANTING PLAINTIFF A DIVORCE BASED ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT WHERE PLAINTIFF WHOLLY FAILED TO PROVIDE CORROBORATING EVIDENCE TO**

**SUPPORT HER ALLEGATIONS.**

**II. THE DISTRIBUTION OF MARITAL PROPERTY IN AN INEQUITABLE AND DISPROPORTIONATE MANNER WARRANTS REVERSAL.**

**III. THE DECREE OF DIVORCE IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

After a careful examination of the record and briefs in this matter, we find that the chancellor erred in awarding Sheila the divorce in that he applied an erroneous legal standard by failing to require that Sheila corroborate her allegations with substantial evidence.

## STATEMENT OF THE FACTS

Michael and Sheila were married in Jackson, Mississippi, on November 23, 1982. No children were born of this marriage. The couple separated on or about March 21, 1995, when Sheila terminated her marital cohabitation with Michael. Sheila filed her Complaint for Divorce and Other Relief on March 23, 1995, based upon the grounds of habitual cruel and inhuman treatment and habitual drunkenness. Sheila also filed at that time a Motion for Protection from Domestic Abuse, resulting in *ex parte* relief in the form of a Temporary Protective Order, signed on March 24, 1995. The Temporary Protective Order directed Michael to refrain from any contact with Sheila and to refrain from any further alleged physical or mental abuse. Additionally, Sheila was given temporary and exclusive possession of the marital home.

A trial was held on May 10 and May 24, 1996, in the Chancery Court of the First Judicial District of Hinds County. Sheila testified regarding her alleged marital problems and Michael's alleged abuse and habitual drunkenness. Two of Sheila's co-workers, Asmita Roy and Mary Hill, testified as to Sheila's reaction after alleged phone calls with Michael. Michael testified in his own behalf, denying all of Sheila's allegations.

Sheila testified that she and Michael had been arguing and having marital problems at least six months before the parties separated. Sheila asserted that much of the marital conflict was caused by Michael's drinking. According to Sheila, Michael would come home intoxicated and would force himself upon her sexually, against her will, and this would continue throughout the night. She alleged that, on one such occasion, Michael sodomized her. Sheila stated that, during these attacks, Michael would curse her, calling her a "whore" and "slut." According to Sheila, she had to leave home on several occasions and spend the night in a motel room.

Sheila maintained in her testimony that she was in fear for her safety. She claimed that Michael would sometimes pick up a gun, go into a bedroom and start playing with the gun. On some such occasions, Sheila testified that she would leave the house, fearing for her life. According to Sheila, she had asked several friends and co-workers to occasionally call her house and see if she was alright, especially if she did not show up on time for work or other commitments.

Sheila testified that on one evening, on the way to a movie, Michael became verbally abusive and the stress caused her to have chest pains, necessitating a trip to the hospital emergency room. Additionally, Sheila stated that she kept a diary, or journal, documenting Michael's abusive behavior.

She claimed that she kept the notebook at work, but did not produce it as evidence at trial.

Two co-workers, Asmita Roy and Mary Hill, testified on Sheila's behalf. Each testified that Sheila had become emotionally upset following alleged phone calls from Michael. Ms. Roy and Ms. Hill both stated that their knowledge of Sheila's marital problems was based upon information relayed to them by Sheila.

Michael, in his testimony, denied ever sexually or mentally abusing Sheila. Additionally, he denied the allegations of habitual drunkenness, but did admit to being a moderate drinker, having beers at happy hour after work about twice a week. Michael testified that he suggested marriage counseling, but Sheila refused his request. According to Michael, he never threatened Sheila and she was never in fear for her life. Michael stated that Sheila had never filed criminal charges against him. Michael testified that, after filing for divorce, Sheila, unaccompanied by anyone other than him, helped him move into his new apartment.

Upon the completion of the testimony regarding the grounds for Sheila's complaint, the chancellor found that Sheila had not proven her allegations of habitual drunkenness, but that she had met her burden of proof on her claim of habitual cruel and inhuman treatment. Sheila was granted a divorce based upon the grounds of habitual cruel and inhuman treatment. The chancellor then heard testimony regarding the marital assets and debts, confirming the amount of marital debt and establishing the inventory and current possession of the personalty. The chancellor reserved his ruling on the distribution of the assets, directing the parties to take the inventory lists and "divide that property into two separate lists as equally and equitably as you can." The record does not indicate whether either party complied with the chancellor's directive. On May 1, Michael made a motion for, and received, a Temporary Restraining Order against Sheila. The order directed Sheila to "cease and desist from removing any joint marital property from the marital domicile and selling and disposing of said property, and that she shall make an accounting of said joint marital property that has already been disposed of."

On May 28, 1996, the chancellor filed his opinion granting the divorce on the grounds of Michael's alleged habitual cruel and inhuman treatment of Sheila and distributing the marital property. The chancellor ordered that the marital home be sold, with the equity divided between the parties, that the marital debts were to be paid by Sheila, that Sheila receive an award of lump-sum alimony in the sum of $7,000[1] to be used toward payment of the debts, and that the parties were to keep the personalty already in their respective possession. The Judgment of Divorce, incorporating the opinion of the chancellor, was entered on June 13, 1996. Michael appeals from that judgment.

## STANDARD OF REVIEW

Our review of the chancellor's finding is well settled. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or an erroneous legal standard was applied. *Spalding v. Spalding*, 691 So. 2d 435, 437 (Miss. 1997); *Bowers Window and Door Co., Inc. v. Dearman*, 549 So. 2d 1309 (Miss. 1989) (citing *Bullard v. Morris*, 547 So. 2d 789, 791 (Miss. 1989)); *Gibson v. Manuel*, 534 So. 2d 199, 204 (Miss. 1988); *Johnson v. Hinds County*, 524 So. 2d 947, 956 (Miss. 1988). "This Court will not reverse a chancellor's decree of divorce unless it is manifestly wrong as to law or fact." *Chamblee v. Chamblee*, 637 So. 2d 850, 859 (Miss. 1994); *Chaffin v. Chaffin*, 437 So. 2d 384,

386 (Miss. 1983) (citing ***Humber v. Humber***, 109 Miss. 216, 68 So. 161 (1915)); ***Dubois v. Dubois***, 275 So. 2d 100 (Miss. 1973).

## DISCUSSION OF THE LAW

### I. THE CHANCELLOR ERRED IN GRANTING PLAINTIFF A DIVORCE BASED ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT WHERE PLAINTIFF WHOLLY FAILED TO PROVIDE CORROBORATING EVIDENCE TO SUPPORT HER ALLEGATIONS.

"According to Mississippi case law, habitual and inhuman treatment as a grounds for divorce must be proved by a preponderance of the credible evidence." ***Chamblee***, 637 So. 2d at 859; ***Rawson v. Buta***, 609 So. 2d 426, 431 (Miss. 1992) (citing ***Cooper v. Cooper***, 518 So. 2d 664, 666 (Miss. 1988)). "The chancellor, as trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." ***Chamblee***, 637 So. 2d at 858 (citing ***Rainey v. Rainey***, 205 So. 2d 514, 515 (Miss. 1967)). Additionally, "[t]he party alleging cruel and inhuman treatment must typically corroborate the testimony." ***Gardner v. Gardner***, 618 So. 2d 108, 113 (Miss. 1993); ***Chambers v. Chambers***, 213 Miss. 71, 56 So. 2d 33 (1952). "Only where 'in its nature or owing to the isolation of the parties, no corroborating evidence is reasonably possible,'should a divorce be granted on the uncorroborated testimony of the plaintiff." ***Gardner***, 618 So. 2d at 114; ***Anderson v. Anderson***, 190 Miss. 508, 200 So. 726, 727 (1941); ***Chambers***, 213 Miss. at 73, 56 So. 2d at 34.

In the instant case, Michael contends that the chancellor erred because Sheila wholly failed to offer corroborating evidence of her testimonial allegations of his cruel and inhuman treatment, especially in the face of his denials. He cites both ***Chamblee*** and ***Anderson***, *supra*, in support of his contention. In ***Chamblee***, the husband sought a divorce on the ground of adultery and the wife countersued on the grounds of habitual cruel and inhuman treatment. ***Chamblee***, 637 So. 2d at 852. The chancellor awarded the husband the divorce on the grounds of adultery and the wife appealed. ***Id.*** at 860. The wife was the only person who actually testified as to her husband's cruel and inhuman treatment. ***Id.*** A witness testified for the wife that she had seen bruises on the wife's arms which looked as if someone had been grabbing her, but was unable to independently verify that the husband caused the bruises. ***Id.*** Additionally, the husband denied every instance of physical abuse of which his wife accused him. ***Id.*** This Court held that the chancellor was correct in denying the divorce to the wife on the grounds of habitual cruel and inhuman treatment because she failed to prove those grounds. ***Id.*** Michael maintains that if the bruises in ***Chamblee*** did not provide sufficient corroboration and proof of abuse, then clearly the evidence in the instant case falls far short of what this Court has always demanded.

Additionally, Michael argues that the testimony of Sheila's two co-workers proved only that they witnessed Sheila being upset after conversations on the phone with him and did not in any way corroborate Sheila's allegations of cruel and inhuman treatment. Michael points to ***Rawson***, *supra*, for support of his argument. In ***Rawson***, the wife filed for divorce based upon irreconcilable differences and habitual cruel and inhuman treatment. ***Rawson***, 609 So. 2d at 428. The wife testified as to the husband's abuse, calling no additional witnesses, but submitting photographs of bruises on her arm allegedly caused by her husband. ***Id.*** at 428-29. The chancellor granted the divorce on the grounds of cruel and inhuman treatment. ***Id.*** at 429. This Court reversed, stating that the "chancellor

abused his discretion in granting the divorce on the sole basis of these photographs. . . . [t]he two photographs of [the wife's] bruised arms are simply not sufficient corroborating evidence given the availability of testimonial witnesses in this case." *Id.* at 432. Michael maintains that if photographs were not sufficient corroboration in *Rawson*, then certainly the testimony of two co-workers without first-hand knowledge is not sufficient corroboration in the instant case.

Michael also maintains that Sheila did not provide any reason for not providing additional corroboration, citing to *Anderson*, *supra*. He contends this is not a case where corroborating evidence was not possible. According to Michael, Sheila claimed that cruel and inhuman treatment was a constant for the six months preceding the divorce and that the parties were not isolated from the world. Michael points out that: Sheila went to motels, yet provided no receipts or witnesses as to that; her co-workers and friends were asked to call and check on her and she did not call them as witnesses; and, she claimed to have kept a diary of his abuse, but did not produce it for evidence. Michael submits that the lower court should have required more evidence than Sheila's testimony and that of two co-workers with no first-hand knowledge of the parties' marital problems.

Michael, finally, asserts that Sheila's credibility was put in issue when her testimony contradicted itself. Sheila's complaint stated that Michael was unemployed yet had substantial funds. In her testimony, Sheila testified that "[i]f he was unemployed, that I do not know." Michael also points to an inconsistency in Sheila's testimony regarding his sexual performance, or lack thereof, resulting from his alleged drinking. Sheila testified that Michael would force himself upon her sexually every time he came home drinking, yet testified that his drinking caused bouts of impotence.

Sheila counters Michael's contentions by relying on the chancellor's role as evaluator of the credibility of the witnesses. She cites *Polk v. Polk*, 559 So. 2d 1048 (Miss. 1990), to support her argument. *Polk* states that "[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of the evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." *Id.* at 1049. Sheila further contends that Michael should have provided corroboration of his testimony: "[h]e fails to inform this court that he totally failed to provide any supporting witnesses on his behalf to contradict the testimony of Mrs. Lambert."

Sheila refutes Michael's contention of her incredible testimony by stating that "[y]es, [Sheila's] testimony had a few worts [(sic)] on it, but that what gives it believability." Sheila sums up her argument by stating, "[w]e could borrow from an old adage here; if it walks like a duck, if it looks like a duck and it sounds like a duck, then it must be a duck. If the Chancellor believes the facts support habitual cruel and inhuman treatment and if the credibility of the witness support habitual cruel and inhuman treatment then there must have been habitual cruel and inhuman treatment."

Michael is correct in his assessment of the law. In the instant case, the chancellor has applied an incorrect standard of law. True, the chancellor is the one charged with the responsibility of weighing and evaluating the testimony of the witnesses, *id.* However, this Court has consistently held since *Anderson*, *supra*, that a plaintiff seeking a divorce based on the ground of habitual cruel and inhuman treatment must present substantial evidence which corroborates the plaintiff's own testimony. *Hassett v. Hassett*, 690 So. 2d 1140, 1146-47 (Miss. 1997) (the wife's uncorroborated testimony that her husband abused her was insufficient to prove that she was entitled to a divorce on the grounds of

habitual cruel and inhuman treatment); *Chamblee*, 637 So. 2d at 860; *Gardner*, 618 So. 2d at 114 (the wife was not entitled to a divorce from her husband based upon the grounds of habitual cruel and inhuman treatment where wife did not provide any corroborating witnesses and her testimony's credibility was placed in doubt); *Rawson*, 609 So. 2d at 431-32; *Cooper v. Cooper*, 518 So. 2d 664, 666-67 (Miss. 1988) (wife's hearsay testimony that IRS agents told her that her husband planned to kill her was insufficient to sustain wife's burden of proof where there was no evidence that wife attempted to get further information and the IRS agents did not testify); *Chaffin v. Chaffin*, 437 So. 2d 384, 386 (Miss. 1983) (husband's evidence, corroborated by others, that wife's continual nagging and absence from home caused him physical and psychological distress, forcing him to leave the house, was sufficient to establish habitual cruel and inhuman treatment); *Gatlin v. Gatlin*, 234 So. 2d 634, 635 (Miss. 1970) (testimony of wife corroborated testimony of husband and warranted granting him a divorce based on habitual cruel and inhuman treatment); *Rainey v. Rainey*, 205 So. 2d 514, 515 (Miss. 1967) (evidence was sufficiently corroborated to sustain decree granting divorce to husband based upon habitual cruel and inhuman treatment when viewed in light of the admissions made by the wife); *Howell v. Howell*, 213 Miss. 141, 56 So. 2d 392, 393 (1952) (testimony of husband's mother sufficient corroboration to warrant grant of divorce to husband based on habitual cruel and inhuman treatment); *Chambers*, 213 Miss. 71, 56 So. 2d at 34; *Anderson*, 190 Miss. 508, 200 So. at 726.

In the instant case, Sheila admits that she does not have any direct evidence to support her allegations of abuse. The testimony of the two co-workers, when viewed in a light most favorable to Sheila, shows only that Sheila was upset after talking to her husband, and clearly does not support Sheila's allegations of abuse. The testimony of the two co-workers does not rise to the level of what this Court has required as substantial evidence corroborating a plaintiff's testimony regarding a divorce on the grounds of cruel and inhuman treatment.

Beyond that, the particularly troublesome aspect of the instant case is that Sheila could easily have provided corroborating evidence. She could have presented hotel receipts or testimony from hotel employees regarding the nights she spent in hotels. Sheila could have presented testimony of co-workers that she had asked to check up on her. She could have presented bills, documentation, medical records, or witnesses that would corroborate her hospital visit. Sheila, perhaps most easily of all, could have presented the diary which she claimed to have kept which documented the alleged abuse she experienced at the hands of Michael.

We find that the chancellor erred in the instant case, failing to apply the correct legal standard. Where a plaintiff is seeking a divorce based upon habitual cruel and inhuman treatment, this Court has unfailingly required that the plaintiff present evidence corroborating his or her own testimony. The chancellor failed to apply our case law in the instant case. We, therefore, reverse the decree of divorce on this issue and remand for consideration consistent with this opinion.

### II. THE DISTRIBUTION OF MARITAL PROPERTY IN AN INEQUITABLE AND DISPROPORTIONATE MANNER WARRANTS REVERSAL.

### III. THE DECREE OF DIVORCE IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

Because we are reversing the decree of divorce in the instant case on Issue I, we do not reach Issues

II and III, except to state that the chancellor must reopen the issue of equitable distribution. The record in the instant case is lacking in any findings of fact or application of equitable distribution principles guiding the chancellor's division of the marital property. The chancellor should make a complete evaluation of the contributions of both spouses to this marriage, make findings of fact, and apply the *Ferguson* factors, as our case law requires. *Chamblee v. Chamblee*, 637 So. 2d 850, 865 (Miss. 1994); *Ferguson v. Ferguson*. 639 So. 2d 921, 927-29 (Miss. 1994).

## CONCLUSION

We hold that the chancellor applied the wrong legal standard, finding Sheila's uncorroborated testimony as to the allegations of Michael's abuse sufficient to grant Sheila the divorce based upon habitual cruel and inhuman treatment, contrary to the long held requirement of this Court that such testimony requires corroboration, and we thereby reverse and remand on this issue. We do not reach discussion of Issues II and III except to state that because the divorce has been set aside, the chancellor must, of necessity, reopen the property distribution and properly apply our equitable division principles.

**REVERSED AND REMANDED.**

**SULLIVAN, P.J., BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, DISSENTING:**

In my view, the testimony of Sheila's friends should be considered sufficient corroborating evidence for her allegations of habitual cruelty. The Chancellor reviewed the testimony of both parties, and he clearly found the testimony of Sheila to be more credible. Cruelty of the sort alleged by Sheila is typically not done in the presence of witnesses, and, in my view, the nature of Sheila's allegations are such that direct proof of the cruelty was not reasonably possible under the facts of the present case. Like the majority, I would be more comfortable with affirming the Chancellor's ruling if Sheila had provided additional indirect proof, such as receipts or testimony from employees at the motels in which she allegedly stayed.

In my view, however, some deference should be shown to the fact that the Chancellor was able to personally view the testimony of the witnesses and assess their credibility. The rule of law requiring strict proof of cruelty is based on the State's interest in preserving the marriage. Sheila's interest, if her testimony is accepted as true, is in securing her freedom from an abusive and destructive marriage. I would submit that the consequences of an erroneous ruling which forces Sheila to remain in such a destructive marriage are potentially severe, and I would accordingly hold the corroborating testimony submitted by Sheila to be sufficient.

In cases in which a Chancellor has found testimony of the sort of outrageous and dangerous conduct

described by Sheila to be persuasive, I consider it improper to require the level of corroboration which the majority has required in the present case. With respect for the view expressed by the majority, I must accordingly dissent.

**PITTMAN AND MILLS, JJ., JOIN THIS OPINION.**

1. To be paid at $200 per month for 35 months.