# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01867-SCT

### CONSOLIDATED WITH
### NO. 2001-CA-00164-SCT

### CONSOLIDATED WITH
### NO. 2001-CA-01519-SCT

*JOHN E. SHAVERS*

*v.*

*ANN B. SHAVERS*

| | |
|---|---|
| DATES OF JUDGMENTS: | 10/03/2000; 01/08/2001; 06/01/2001 |
| TRIAL JUDGE: | HON. WALTER WESLEY TEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | B. G. PERRY |
| ATTORNEYS FOR APPELLEE: | DAMON SCOTT GIBSON |
| | HERBERT J. STELLY, SR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AS TO 2000-CA-01867-SCT AND 2001-CA-00164-SCT, APPEALS DISMISSED.  AS TO 2001-CA-01519-SCT, AFFIRMED - 05/22/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    This appeal involves three consolidated appeals filed by John E. Shavers (John) arising from the divorce action filed by his wife, Ann Shavers (Ann).  Prior to the final judgment of divorce, Ann filed two separate motions to find John in contempt of the trial

court's temporary order. John was found in contempt on both occasions, and he filed a notice of appeal with this Court as to each judgment of contempt. John also has filed a notice of appeal as to the final judgment of divorce.

¶2. Since the appeals were filed, John has been placed into involuntary bankruptcy proceedings. Because the automatic stay pursuant to 11 United States Code, Section 362, does not operate as a stay for the continuation of a civil action for the dissolution of marriage, we proceed with the issues before us on appeal. *See* 11 U.S.C. § 362(b)(2)(A)(iv). Nothing in this opinion is to be construed as a determination of the division of property.

¶3. Finding that John has abandoned the issues on appeal with regard to the judgments of contempt in consolidated appeals numbered 2000-CA-01867-SCT and 2001-CA-00164-SCT, we dismiss those appeals. Further, we find no merit in the issues John raised in his third consolidated appeal and, therefore, affirm the final judgment of divorce.

## FACTS

### 2000-CA-01867-SCT

¶4. Ann and John were married in Long Beach, Mississippi, on June 8, 1968. The couple had one child together, John Anthony Shavers, who was not a minor at the time of the parties' divorce proceedings. In January of 1999, after thirty years of marriage, Ann filed a complaint for divorce against John. The complaint alleged habitual cruel and inhuman treatment and irreconcilable differences in the alternative. After a two-day hearing, a temporary order was entered on July 23, 1999.

¶5. On August 18, 1999, Ann filed her amended complaint, adding an additional fault ground of adultery. John filed his answer to the amended complaint contemporaneously with

2

his counter-complaint for divorce on the grounds of adultery, habitual cruel and inhuman treatment, or irreconcilable differences in the alternative.

¶6. Due to the extensive nature of the parties' assets as they existed at the time, the chancery court sought the parties' agreement on the appointment of an expert to value their property. In its order of July 23, 1999, the chancery court directed that James Koerber would be appointed as the chancery court's expert valuator in the event the parties were unable to agree. The chancery court also ordered that John pay the retainer fee of the expert. Ann and John were unable to agree, and Koerber was appointed as the expert valuator by operation of the order.

¶7. On March 10, 2000, the chancery court entered another order addressing Koerber's duties in the divorce action. This order affirmed his appointment as the chancery court's expert and gave him the position of a master pursuant to Rule 53 of the Mississippi Rules of Civil Procedure.

¶8. On May 8, 2000, the chancery court entered an order directing Koerber to employ an equipment appraiser, Sanderson, to replace Guy Blankenship, who was appointed by the March 10, 2000, order. Further, the May 8, 2000, order again directed John to advance the costs of Sanderson's fee in the amount of $4,000 and to advance the additional costs of Koerber's fees of $8,500 and $574. The chancery court reserved the assessment of these costs between Ann and John until the final hearing.

¶9. On August 10, 2000, Ann filed a motion to cite John for contempt for failing to advance the appraiser's fees as directed by the May 8, 2000, order. Ann also requested that she be permitted to sell real property in order to meet her financial needs due to the

3

protracted nature of the litigation. John filed a motion to remove Koerber as the expert valuator and to terminate support payments to Ann.

¶10.    A hearing on Ann's complaint and John's motions was held on October 2 and 3, 2000. The chancery court denied John's motion to remove Koerber and found John in contempt of court for failing to advance the appraiser's fees as directed. The chancery court stayed John's punishment for contempt pending compliance and ordered John to provide Koerber with financial documents and information within ten days. Ann was permitted to borrow funds against a piece of real property and her support was reduced to $500 per week upon her receiving the funds from the loan. John filed his notice of appeal on November 1, 2000.

### 2001-CA-00164-SCT

¶11.    John began to file other motions with the chancery court such as: a Motion to Dismiss the Divorce; a Motion to Recuse Herb Stelly, Sr.; a Motion to Set Application for Disqualification and an Amendment to Application for Disqualification (requesting the judge to remove or recuse himself); and a Motion to Withdraw Motion to Dismiss Divorce.

¶12.    On December 14, 2000, Ann filed another complaint to cite John for contempt for failing to comply with the provisions of the October 3, 2000, order which directed John to furnish Koerber with financial information. Johns was ordered to supply the identified financial documentation within ten days of October 3, 2000. As of the date of Ann's contempt complaint, John had not complied. The divorce trial had been scheduled to begin on January 22, 2001, and Koerber was unable to complete his valuation with the information he had received from John.

4

¶13. On January 2, 2001, John filed a Notice of Federal Removal. Attached to this pleading was a Notice of Federal Removal which had been filed with the Federal District Court for the Southern District of Mississippi, in Biloxi, on the same day. Attached to the Notice of Federal Removal filed with the federal court was a copy of Ann's contempt complaint filed December 14, 2000. John did not attach any other pleadings, claims, or complaints to his Notice of Federal Removal with the federal court.

¶14. A hearing took place in the chancery court on January 4, 2001, on the various motions filed by John and the contempt complaint filed by Ann on December 14, 2000. The chancery court found most of John's motions to be without merit. At this hearing, John asked the chancery court to set an appeal bond with respect to his appeal filed November 1, 2000. The chancery court set the bond at $7,000, which John filed with the clerk on January 5, 2001.

¶15. Additionally, at this hearing, the chancellor found John in contempt for his failure to provide the documents ordered to be produced to Koerber by the October 3, 2000, order. The chancellor stayed the punishment pending compliance by John. John filed his notice of appeal on January 23, 2001.

¶16. John's notice of appeal indicates that his appeal of the January 4, 2000, order, which was entered on January 8, 2000, is limited exclusively to paragraphs 8(E) and 13. Paragraph 8(E) deals with the citation of contempt for failing to produce to Koerber the financial information, and paragraph 13 pertains to the award of attorneys' fees to Koerber.

**2001-CA-01519-SCT**

¶17. The chancery court reset the divorce trial for May 29, 2001. At trial, the parties entered into a "Consent to Divorce on the Grounds of Irreconcilable Differences and Request

5

that the Court Decide Controverted Issues Between the Parties" pursuant to Mississippi Code Annotated, Section 93-5-2 (Rev. 1994). After two days of testimony, the chancery court recessed so the parties could discuss settlement. The parties negotiated for a day and a half before submitting a consent settlement agreement to the chancery court.

¶18. Ann and John agreed that Ann would go forward with her divorce on the ground of habitual, cruel and inhuman treatment. The chancellor examined Ann on the factual basis of her claim and the jurisdictional requirements. She testified that there had been problems, arguments, fights, disputes, disagreements, and the like during the course of her marriage to John. She further testified that if she remained in the marriage, it would be injurious to her life, safety, and health, both physically and emotionally. The chancellor then granted Ann a divorce on the ground of habitual, cruel and inhuman treatment.

¶19. The chancellor reserved to the parties the right to submit an irreconcilable differences divorce for approval, but no such divorce or agreement was presented. The chancery court entered its Judgment of Divorce on September 7, 2001, *nunc pro tunc*, August 23, 2001.

¶20. John filed his notice of appeal, challenging only the provision of the judgment of divorce which granted the divorce on the ground of habitual, cruel and inhuman treatment. Later, by order of September 28, 2001, the judgment was amended, on the chancery court's own motion, to read "nunc pro tunc, June 1, 2001," the date on which the settlement was concluded and announced.

## ANALYSIS

**2000-CA-01867-SCT and 2001-CA-00164-SCT**

6

¶21. The only issues that John has identified and argued in these consolidated appeals are those pertaining to the final judgment of divorce entered on September 7, 2001, as later amended on the chancery court's own motion by the order of September 28, 2001, which reads "nunc pro tunc, June 1, 2001," the date on which the settlement was concluded and announced. In his brief, John has abandoned any issues he may have wanted to raise in the first two appeals. Not only has he failed to identify the issues in his brief pursuant to Mississippi Rules of Appellate Procedure 28(a)(3), John has not argued or cited any authority in support of any issues that could have been raised in his first two appeals.

¶22. This Court consistently has held that an unsupported assignment of error will not be considered. *Ellis v. Ellis*, 651 So. 2d 1068, 1072 (Miss. 1995). This Court does not have to consider alleged error when no authority is cited for the error in the brief. *Armstrong v. Armstrong*, 618 So. 2d 1278, 1282 (Miss. 1993). *See also Brown v. Miss. Transp. Comm'n*, 749 So. 2d 948, 959 (Miss. 1999). Accordingly, we dismiss the appeals numbered 2000-CA-01867-SCT and 2001-CA-00164-SCT.

## 2001-CA-01519-SCT

I. **WHETHER THE JUDGMENT OF FAULT DIVORCE IN FAVOR OF ANN B. SHAVERS AND AGAINST JOHN E. SHAVERS IS AN ABSOLUTE NULLITY DUE TO FEDERAL REMOVAL**.

¶23. John argues that the divorce judgment is invalid because, when it was granted on June 1, 2001, the matter had been removed to federal court, leaving the chancery court without jurisdiction. The matter was not remanded until August 17, 2001. This issue is without merit.

7

¶24.    On January 2, 2001, John filed his Notice of Federal Removal in the federal court and with the chancery clerk.  The federal court order remanding the matter was not issued until August 17, 2001.  Additionally, on January 8, 2001, John filed an amended and supplemental notice of removal.  However, it is clear from the notice and the pleading attached to it that John sought only to remove "the attached Motion to Cite for Contempt of Court."  Likewise, the amended and supplemental notice added only a "Motion in Limine to Cite for Contempt of Court" and a "Motion to Lift Stay," which also relate only to the contempt proceedings.

¶25.    Although contempt proceedings in divorce cases often are filed in the same cause number and proceed with the underlying divorce case, they are held to be separate actions, requiring new and special summons under Mississippi Rules of Civil Procedure 81.  *See* *Shangi v. Shangi*, 759 So. 2d 1250 (Miss. Ct. App. 2000).  This is further evidenced by the August 17, 2001, order remanding cases issued by the federal magistrate judge, which stated that removal proceedings were treated by the district court only in regard to the contempt and discovery issues identified in John's notices of removal and that they were remanded with John's agreement.

¶26.    John's other actions in the proceedings in the chancery court during the divorce trial show that even he considered his removal efforts to be limited.  Even if we assume, for the sake of argument, that the removal petitions encompassed the divorce as well as the ancillary contempt matters, there is at least limited authority holding that by proceeding in the state court following removal, the defendant may waive objections to those proceedings.

¶27.    In *Mosher v. Conway*, 76 P.2d 231 (Ariz. 1938), Conway brought an action in an Arizona state court to quiet title to land. Mosher, one of the defendants, filed a general

demurrer and a general denial. She also demanded a jury trial in open court. On the day set for trial, Mosher did not appear. Conway presented his evidence, and the trial judge instructed the jury to return a verdict for Conway.

¶28. On direct appeal, Mosher argued that the trial court had no jurisdiction because Collins, one of the other defendants, previously had removed the case to federal court. However, Mosher subsequently filed a motion to make the complaint more definite and certain. Later, she made demand in open court for a jury trial, and subsequently filed her answer to the complaint. Her motion for a new trial made no mention of the removal.

¶29. The Arizona Supreme Court stated that "[o]n consent of all the parties the jurisdiction could, if lost, be resumed. If the court had no right to exercise jurisdiction over the case, good faith and fairness on defendant's part should require that she make some objection to the court's trying the case." *Mosher*, 76 P.2d at 233. The Arizona Supreme Court then held that the "objection comes too late when presented for the first time in this court."

¶30. Although *Mosher* is not controlling in this Court, it is persuasive. The facts of the instant case strongly support a finding that John waived any such objection and is estopped from raising the objection in this Court. On May 29, 2001, *prior* to the district court entering its August 17, 2001, order remanding the matter, John and Ann submitted an agreement to the chancery court to consent to divorce on the grounds of irreconcilable differences and requested the court to decide controverted issues. The agreement expressly declared that "*each party voluntarily consents to the Court granting a divorce to the parties on the ground of Irreconcilable Differences"* and that "*each party hereby voluntarily consents to permit the Court to decide the issues upon which the parties cannot agree."* (Emphasis added).

9

¶31. The trial proceedings lasted for several days with John present and represented by four attorneys. John offered motions in limine and to strike Koerber's valuation. His attorneys engaged in extensive cross-examination of witnesses, and at the conclusion of the trial, the parties announced a settlement which was approved by the chancellor. The settlement provided that Ann be granted a divorce on the grounds of habitual cruel and inhuman treatment and further disposed of financial issues.

¶32. By John's own actions, he confirmed that the federal removal was limited to the contempt proceedings. Further, the following colloquy between the trial judge and B.G. Perry, one of John's attorneys, verified the distinction between the divorce action and the contempt action concerning removal:

> THE COURT: If U.S. District Judge Bramlette will take this divorce trial, it will be a novelty and oh, it would be wonderful.
>
> MR. PERRY: Your Honor, we didn't send him the whole thing now.
>
> THE COURT: Oh, you sent him the contempt portion or tried to . . . .

As stated before, there is no merit to this issue.

**II.      WHETHER THE JUDGMENT OF FAULT DIVORCE IN *SHAVERS v. SHAVERS* IS UNCONSTITUTIONAL AND DENIES DEFENDANT DUE PROCESS OF LAW.**

¶33. John asserts that the chancery court's "rendition of a fault divorce on grounds against John E. Shavers in lieu of Irreconcilable Differences and No Fault, denies John E. Shavers his constitutional rights of 'due process of law,' by the State of Mississippi, as guaranteed by the Fourteenth Amendment, United States Constitution, and therefore the Judgment of Divorce on grounds of fault against John E. Shavers is unconstitutional, null and void." It

10

is difficult to discern from John's brief the exact argument he is attempting to make concerning the alleged due-process violation. John does not cite any authority for his contention and we decline to address it. *Armstrong*, 618 So. 2d at 1282. Further, John's argument again returns to the topic of the chancery court's jurisdiction pending federal removal. This issue was discussed previously and found to be without merit.

### III. WHETHER THE DIVORCE JUDGMENT BASED ON HABITUAL, CRUEL AND INHUMAN TREATMENT IS VOID DUE TO ANN SHAVERS'S FAILURE TO OFFER CORROBORATING EVIDENCE.

¶34. In the "summary of the argument" portion of his brief, John briefly mentions that Ann failed to meet her burden of proof with testimony of a corroborating witness and, therefore, Ann should not have been granted a divorce on the ground of habitual cruel and inhuman treatment. John again has failed specifically to identify the issue in his statement of the issues. M.R.A.P. 28(a)(3). Further, John has failed to argue his position or cite authority on this issues. Although this claim is abandoned, such a claim, if meritorious, would amount to plain error. Therefore, we address it.

¶35. A chancellor may grant a divorce on the ground of "habitual, cruel and inhuman treatment." Miss. Code Ann. § 93-5-1 (Rev. 2004). Mississippi case law requires that the plaintiff prove this ground for divorce by a preponderance of the credible evidence. *Cooper v. Cooper*, 518 So. 2d 664, 666 (Miss. 1988). The party alleging cruel and inhuman treatment typically must corroborate the testimony. *Gardner v. Gardner*, 618 So. 2d 108, 114 (Miss. 1993); citing *Chambers v. Chambers*, 213 Miss. 71, 56 So. 2d 33 (1952).

¶36.	After two and one-half days of testimony regarding financial issues, the chancery court recessed to allow John and Ann to discuss settlement. The parties and counsel then returned, announcing a settlement agreement which resolved the financial issues and agreed that Ann would receive a divorce from John based on habitual, cruel and inhuman treatment, which John would not contest. "Mississippi rules require that '[i]n all uncontested divorce cases, except irreconcilable differences, the testimony of the Plaintiff must be substantially corroborated.'" *Gardner*, 618 So. 2d at 114 (quoting Miss. Unif. Chan. Ct. R. 8.03 (1990)).

¶37.	The chancellor called for an understanding of all present that the divorce was being settled on fault grounds, and indicated that if the parties brought him a no-fault judgment, with the property settlement as agreed, he would sign it; otherwise, the chancellor said he would enforce the judgment on the fault ground.

¶38.	The transcript contains the following dialogue:

THE COURT:	Very Well. Mrs. Shavers, do you tell me that there have been problems, arguments, fights, disputes, disagreements and the like during the course of this marriage that now convince you that you want the marriage to be ended and over with. Is that true?

MRS. SHAVERS:	Yes, sir.

THE COURT:	Do you feel that if you stayed in the marriage that it would be hazardous or injurious to your life, safety, health and that's either physically or emotionally. Do you feel that way?

MRS. SHAVERS:	Yes, sir.

THE COURT:	Do you now feel that it's in your best interest to be divorced, finally?

MRS. SHAVERS:	Yes, I do?

THE COURT: All right. Okay. With that being said, I'm going to take into consideration all of the previous testimony that I have heard in the course of the trial including any and all motions in the temporary hearing and based on that and the facts contained therein, I do hereby grant the divorce on the statutory grounds of habitual, Cruel and Inhuman Treatment and that divorce is awarded to Wife.

The parties have reserved the right to present me an Irreconcilable Differences Judgment and Property Settlement Agreement and I will allow them to do that.

¶39. In order to establish the basis for divorce on the ground of habitual, cruel and inhuman treatment, the claimant should produce evidence to prove conduct of the defendant that "endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance." *Gardner*, 618 So. 2d at 113-14 (citation omitted). There is no question that Ann established the basis for a divorce on the ground of habitual, cruel and inhuman treatment through her own testimony. The question asked by John, however, is whether her testimony was corroborated.

¶40. The transcript from the temporary hearing held June 22 and 23, 1999, reveals testimony from both parties regarding physical altercations between John and Ann. Ann testified that John "beat the crap" out of her. On cross-examination, John admitted to hitting Ann with an open hand, although he disputed where and how hard he hit her. During the cross-examination of John on this point, the chancellor stated: "Hang on just a second. I really don't want to hear anymore of this. It's obviously been established that for whatever

13

reason or whoever's fault, there has been established some measure of domestic violence that took place. I don't need to hear anything else on that."

¶41. The chancellor considered the testimony from the temporary hearing in rendering his final judgment of divorce. It is clear from the transcript of that hearing that John corroborated Ann's testimony. As the trier of fact, the chancellor must evaluate the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony. *Rainey v. Rainey*, 205 So. 2d 514, 515 (Miss. 1967). The issue here was a factual one and the chancellor's decision will not be disturbed since it was not manifestly wrong. This Court will defer to his determination.

¶42. We find that Ann's testimony was corroborated and John's assignment of error is without merit.

### CONCLUSION

¶43. We dismiss the consolidated appeals numbers 2000-CA-01867-SCT and 2001-CA-00164-SCT and affirm the final judgment of divorce for the reasons set forth above.

¶44. **AS TO 2000-CA-01867-SCT AND 2001-CA-00164-SCT, APPEALS DISMISSED. AS TO 2001-CA-01519-SCT, AFFIRMED.**

**WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, AND RANDOLPH, JJ., CONCUR. DICKINSON AND LAMAR, JJ., NOT PARTICIPATING.**