49 So.3d 669 (2010)
Philip Wayne LADNER, Sr., Appellant
v.
Deborah LADNER, Appellee.
No. 2008-CA-02110-COA.
Court of Appeals of Mississippi.
December 14, 2010.
*670 J. Richard Kanuch, attorney for appellant.
Robert H. Koon, Gulfport, attorney for appellee.
Before MYERS, P.J., IRVING and MAXWELL, JJ.
IRVING, J., for the Court:
¶ 1. Philip Wayne Ladner Sr. and Deborah Ladner each filed for a divorce in the Hancock County Chancery Court; Deborah asserted that Philip had subjected her to habitual cruel and inhuman treatment, while Philip filed a counterclaim for divorce on the ground of adultery. The chancery court granted Philip and Deborah each a divorce on their respective fault grounds. The court then divided the marital estate, emancipated the Ladner's minor child, granted Deborah alimony, and ordered Philip to pay part of Deborah's attorney's fees. Feeling aggrieved, Philip appeals and asserts that the chancellor erred in granting a dual-fault divorce, in finding that Deborah had proven habitual cruel and inhuman treatment, in awarding periodic alimony to Deborah, and in ordering Philip to pay Deborah's attorney's fees.
¶ 2. There is insufficient evidence to support Deborah's claim of habitual cruel and inhuman treatment; therefore, we reverse and render the chancery court's grant of a divorce to Deborah on that ground. We also find that the chancellor's findings are inadequate to support the award of attorney's fees, and we reverse and remand that issue to the chancery court so that it may enter adequate findings. However, we find no fault with the chancery court's alimony order and, therefore, affirm that part of the judgment. As neither party has challenged the chancery court's grant of a divorce to Philip, that part of the judgment also remains undisturbed.

FACTS
¶ 3. Deborah and Philip wed in 1982; their first child, Kristen, was born in 1983. Later, Philip went to work offshore. Deborah and Philip's relationship became more strained after Philip went to work offshore. In 1989, Deborah gave birth to *671 their second child, Philip Jr. Throughout 2005, Deborah engaged in an extramarital affair, which Philip found out about in January 2006. Despite attending marital counseling, Deborah filed for divorce on May 25, 2006, and Philip filed for divorce on July 17, 2008.
¶ 4. At trial, Deborah claimed that Philip had sexually assaulted her numerous times. Deborah also testified that Philip was verbally abusive, physically abusive, and that he had once threatened her with a gun. Deborah admitted that she had engaged in an approximately year-long extramarital affair shortly before her separation from Philip. Philip denied that he was abusive, denied that he had sexually assaulted Deborah, and denied that he had held a gun to her head. Deborah offered no evidence, other than her own testimony, to support her allegations.
¶ 5. At the conclusion of the trial, the chancellor found that Deborah was entitled to a divorce from Philip on the ground of habitual cruel and inhuman treatment; he also found that Philip was entitled to a divorce from Deborah on the ground of adultery. After dividing the marital estate, the chancery court determined that Deborah was entitled to periodic alimony and that Philip should pay for half of Deborah's attorney's fees.
¶ 6. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 7. Our supreme court has set out the standard of review that we apply in cases such as this one:
We employ a limited standard of review in domestic relations cases. "[An appellate court] will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." Duncan v. Duncan, 774 So.2d 418, 419 [(¶ 4)] (Miss.2000) (citing Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 [(¶ 13)] (Miss.1999).) "Under the standard of review utilized to review a chancery court's findings of fact, particularly in the areas of divorce, alimony[,] and child support, [an appellate court] will not overturn the [chancery] court on appeal unless its findings were manifestly wrong." Id. For questions of law, our standard of review is de novo. Id. (citing Consol. Pipe & Supply Co. v. Colter, 735 So.2d 958, 961 [(¶ 13)] (Miss.1999)).
In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss.2010).

1. Grant of Dual-Fault Divorce
¶ 8. In his first contention of error, Philip argues that the chancellor was unable, under Mississippi law, to grant a fault divorce to both Philip and Deborah. This question is moot because we are reversing and rendering the chancellor's grant of a divorce to Deborah.

2. Determination of Fault
¶ 9. Philip contends that the chancellor erred in finding that Deborah proved that she had been subjected to habitual cruel and inhuman treatment. We agree.
¶ 10. It is undisputed that a chancery court may grant a divorce on the fault ground of "habitual, cruel and inhuman treatment." Shavers v. Shavers, 982 So.2d 397, 403 (¶ 35) (Miss.2008) (citing Miss.Code Ann. § 93-5-1 (Rev.2004)). This particular fault ground must be proven "by a preponderance of the credible evidence." Id. (citing Cooper v. Cooper, 518 So.2d 664, 666 (Miss.1988)). Most importantly, *672 "[t]he party alleging cruel and inhuman treatment typically must corroborate the testimony." Id. (citing Gardner v. Gardner, 618 So.2d 108, 114 (Miss.1993)). The corroborated testimony must show conduct that "endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering it impossible for [the other] spouse to discharge the duties of the marriage, thus destroying the basis for its continuance." Id. at 404 (¶ 39) (quoting Gardner, 618 So.2d at 113-14).
¶ 11. As mentioned above, Deborah provided evidence in the form of her own testimony that Philip had been abusive and had assaulted her. Deborah also offered two police reports and two protective orders into evidence. However, as the chancery court correctly noted, those documents had no corroborative value, as all of the information on them was provided by Deborah. The only other evidence that was offered was a statement on one of the police reports that Philip Jr. was afraid of his father and Philip's testimony that he had broken his daughter's door once in anger. Neither of these are sufficient to corroborate Deborah's testimony about the alleged abuse against her; at best, the incidents show that Philip had a troubled relationship with his children.[1] In short, there is no evidence to corroborate Deborah's testimony. As such, there was not enough credible evidence for the chancellor to grant Deborah a divorce on the basis of habitual cruel and inhuman treatment.
¶ 12. Therefore, we reverse and render the chancery court's grant of a fault divorce to Deborah.

3. Periodic Alimony
¶ 13. Philip contends that the chancery court erred in granting Deborah periodic alimony. In part, Philip argues that alimony was improper because Deborah failed to prove that she had been subjected to habitual cruel and inhuman treatment.
¶ 14. We find no error in the chancery court's grant of periodic alimony. Although we are reversing and rendering the chancery court's finding of fault as to habitual cruel and inhuman treatment, fault is only one ground that is considered under the factors found in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993). It is clear from the chancery court's judgment that it adequately considered the other factors for granting alimony and found that alimony is justified. Most significantly, the chancery court found that Philip makes approximately four times as much as Deborah, and Deborah is in poor health compared to Philip. Even removing fault as a factor, it is clear that there is a sufficient basis for the chancery court's grant of periodic alimony.
¶ 15. This contention of error is without merit.

4. Attorney's Fees
¶ 16. Philip contends that the chancery court erred in ordering Philip to pay Deborah's attorney's fees because she is able to pay them.
¶ 17. Philip is correct that the touchstone issue in granting attorney's fees is a party's inability to pay her attorney's fees. Fisher v. Fisher, 771 So.2d 364, 369 (¶ 18) (Miss.2000) (citing Grogan v. Grogan, 641 So.2d 734, 744 (Miss.1994)); Gray v. Gray, 745 So.2d 234, 239 (¶ 26) (Miss. 1999) (citing Benson v. Benson, 608 So.2d 709, 712 (Miss.1992)). However, the chancery court did not make any specific finding as to Deborah's inability to pay her *673 attorney's fees. Accordingly, we reverse the chancellor's award of attorney's fees and remand this case to the chancery court. Johnson v. Johnson, 650 So.2d 1281, 1288-89 (Miss.1994). On remand, the chancery court must examine Deborah's financial situation and make specific findings as to Deborah's ability to pay her attorney's fees.
¶ 18. THE JUDGMENT OF THE HANCOCK COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, P.J., NOT PARTICIPATING.
CARLTON, J., dissenting:
¶ 19. I respectfully dissent from the majority's decision to reverse and render the chancery court's grant of a fault divorce to Deborah Ladner. Upon review of my record, I find that sufficient evidence exists to corroborate Deborah's testimony regarding Philip Ladner's abuse; therefore, I would affirm the chancery court's grant of a divorce based on the fault ground of habitual cruel and inhuman treatment.
¶ 20. The Mississippi Supreme Court has held that a divorce on the ground of habitual cruel and inhuman treatment "will not be granted on the uncorroborated testimony of the complainant." Anderson v. Anderson, 190 Miss. 508, 512, 200 So. 726, 727 (1941). This Court has further established that "[t]he complaining spouse's testimony alone is inadequate to establish habitual cruel and inhuman treatment to obtain a divorce." Hoskins v. Hoskins, 21 So.3d 705 707 (¶ 7) (Miss.Ct.App.2009).
¶ 21. In the present case, the majority found that the evidence presented at trial provides insufficient corroboration to Deborah's testimony about the alleged abuse by Philip. At trial, Deborah offered two police reports and two protective orders into evidence, as well as a statement on one of the police reports that Deborah and Philip's son, Philip Jr., was afraid of his father. In addition, Philip himself admitted at trial that he had broken his daughter's door once in anger.
¶ 22. The record also reveals that during the trial, Deborah testified that her daughter and a neighbor have called the police on two separate occasions regarding a domestic disturbance between Philip and Deborah. In the report from the Waveland Police Department, Reporting Officer David Allen detailed that he was dispatched to the Ladners' home at 1201 McKinley Street, Waveland, Mississippi, on May 17, 2006, at approximately 10:30 p.m. According to Officer Allen's report, he stated that he:
contacted Deborah Ladner who stated that she had gotten an order of protection against her husband Phillip [sic] Ladner but the order did not stipulate that he could not live at their residence at 1201 McKinley. [Deborah], who was staying at 1236 McKinley, stated that her son, Phillip [sic] Ladner Jr., had come home from work and found that his father had put new locks on the house. [Philip] was not at the house.
....
Philip Jr. did not want to call his father... because he was scared of him. I suggested that he go with his mother for the time being, if custody arrangements *674 permitted it, and come back later when his father was [sic] home.
¶ 23. Our supreme court has established that in cases involving a divorce based on the ground of habitual cruel and inhuman treatment, "[t]he corroborating evidence need not be sufficient in itself to establish the ground"; rather, "it need only provide enough supporting facts for a court to conclude that the plaintiff's testimony is true." Bell on Mississippi Family Law § 4.02[8][d] at 74 (citing Anderson, 190 Miss. at 508, 200 So. at 728). Additionally, the supreme court has stated that chancellors are charged with weighing the evidence presented, and an appellate court will not disturb a chancellor's determination when supported by findings of fact unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Samples v. Davis, 904 So.2d 1061, 1063-64 (¶ 9) (Miss.2004) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88 (¶ 10) (Miss.2002)). This Court respects those findings of fact which are supported by substantial credible evidence. Keough v. Keough, 742 So.2d 781, 782 (¶ 5) (Miss.Ct. App.1999).
¶ 24. Keeping this standard of appellate review in mind, I find that the record indeed reflects sufficient evidence to support the chancellor's findings of fact in the present case. Although the majority held that Deborah had failed to provide evidence to corroborate her testimony, I find that the two petitions for temporary protection from Philip, as well as the police report issued in response to Philip's violation of the protective order, in which the reporting officer noted that Philip Jr. was scared of his father, provide sufficient evidence for the chancellor's grant of divorce on the ground of habitual cruel and inhuman treatment. Therefore, I dissent from the majority's decision to reverse and render the judgment of the chancery court.
NOTES
[1] Philip Jr. was seventeen years old at the time of the police report, and Kristen was apparently seventeen years or older at the time of the door-breaking incident.