# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01852-COA

IN RE THE ESTATE OF VERNON MARIE
HORN WYLIE:
SHEILA RUSSELL                                                    APPELLANT

v.

DONNIE EUVON HORN BYRD                                            APPELLEE

DATE OF JUDGMENT:              11/02/2015
TRIAL JUDGE:                   HON. JACQUELINE ESTES MASK
COURT FROM WHICH APPEALED:     PRENTISS COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        THOMAS MELVIN MCELROY
ATTORNEY FOR APPELLEE:         DUNCAN L. LOTT
NATURE OF THE CASE:            CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                   AFFIRMED IN PART; VACATED IN PART,
                               AND REMANDED: 08/15/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     This appeal concerns a series of disputes between sisters Sheila Russell and Donnie

Byrd over real property left to them by their mother, Vernon Marie Horn Wylie.  It turns on

Byrd's "motion to construe" Wylie's will, essentially decided by default after Russell failed

to appear at the hearing on the motion.

¶2.     Mississippi Rule of Civil Procedure 81(d) provides that will construction must be

raised by petition or complaint, and that Russell must be served with a Rule 81 summons for

a hearing.  Since she was not, and since she did not waive service of process by appearing

and defending the issue on the merits, the chancery court's decision construing the will is void for want of jurisdiction, and the partition of the property must be vacated. We find no error on the remaining issue, a boundary dispute between Russell and the estate, as the chancellor's decision was supported by substantial evidence.

## STANDARD OF REVIEW

¶3.     A chancellor's factual findings will not be reversed unless they are manifestly wrong or clearly erroneous. *Paw Paw Island Land Co. v. Issaquena & Warren Ctys. Land Co.*, 51 So. 3d 916, 923 (¶26) (Miss. 2010). However, a chancellor's legal conclusions are reviewed de novo. *Id.*

## DISCUSSION

### 1.     Will Construction

¶4.     Wylie died on March 25, 2006. She left a will, executed in 1972, and a codicil from 1979. The codicil devised to Russell "the South part of the bottom . . . and this is the portion where she has her house situated." To Byrd, it gave "the North part of the bottom." The remainder was devised to Byrd and Russell, in equal shares, to share and share alike. The codicil named Byrd and Russell coexecutors, and they filed a petition for probate in March 2008.

¶5.     In May 2008, Byrd filed a "motion to construe will," which contended that the specific devises of real property (i.e., the north and south "parts" of the "bottom") were "confusing and inapplicable due to subsequent transfers." Attached to the motion was a certificate of

2

service stating that the motion had been mailed to Russell's attorney. On December 5, 2008, the chancery court entered an order setting the matter of "Estate" for hearing on February 23, "2008."

¶6.    On December 29, 2008, Russell's attorney filed a motion to withdraw based on a "complete breakdown of the attorney/client relationship." The chancellor entered an order on February 23, 2009, allowing the attorney to withdraw. The same day, the chancery court held a hearing on the motion to construe the will. Russell did not appear. On March 12, 2009, the court entered an order construing the will, finding that the devises in question were ambiguous and that insufficient evidence had been offered at the hearing to determine their meaning. The chancellor found the devises to be void for uncertainty and that the share-and-share-alike residual clause controlled the inheritance of the real property.

¶7.    On March 24, Russell's newly hired attorney filed a motion seeking additional time to file a motion for rehearing. In response to the motion, the chancery court held a hearing on what the chancellor called Russell's Rule 60 motion. *See* M.R.C.P. 60. Russell admitted she had been aware of a hearing scheduled for February 23, but she denied knowing a motion to construe the will had been filed or that it would be the hearing's subject. For reasons that are unclear, Russell believed the February 23 hearing had been canceled after her attorney withdrew. She testified that she had difficulty communicating with her former attorney, who would not return her calls. Apparently, Russell believed her attorney had scheduled the February 23 hearing and had then canceled or postponed it, or that it would be canceled or

3

postponed because the attorney withdrew. Russell "knew that [her attorney] had got a court date," "[b]ut when [the attorney] dropped the case, [Russell] thought that was all of it."

¶8. After Russell presented her evidence at the hearing, Byrd's attorney asked the court for the opportunity to submit briefing. The chancellor agreed and gave both parties ten days to submit briefs by letter. The chancellor's subsequent order denying Russell relief noted that briefs had been submitted, but the briefs are not found in the record. The chancellor's order denying relief stated only that Russell had not shown she was entitled to relief under Rule 60(b).

¶9. On appeal, Russell argues she received insufficient notice of the February 23 hearing and that the chancellor's decision construing the will is void because she did not receive process. She points to Mississippi Rule of Civil Procedure 81(d), which states in relevant part (emphasis added):

> **(d) Procedure in Certain Actions and Matters.** The special rules of procedure set forth in this paragraph shall apply to the actions and matters enumerated in subparagraphs (1) and (2) hereof and shall control to the extent they may be in conflict with any other provision of these rules.
>
> (1) The following actions and matters shall be triable 30 days after completion of service of process in any manner other than by publication or 30 days after the first publication where process is by publication, to-wit: adoption; correction of birth certificate; alteration of name; termination of parental rights; paternity; legitimation; uniform reciprocal enforcement of support; determination of heirship; partition; probate of will in solemn form; caveat against probate of will; will contest; *will construction*; child custody actions; child support actions; and establishment of grandparents' visitation.

¶10. Byrd does not seriously contest the argument that Russell should have received a Rule

4

81 summons. Instead, Byrd contends that the issue has been waived. Her first argument is easily disposed of – Byrd claims that Russell failed to cite authority for the proposition that Rule 81 applies to will construction actions. But Russell cited the rule itself, which states unambiguously that a Rule 81 summons is required for "will construction" actions and matters. *See* M.R.C.P. 81(d)(1). The rule is clear that the issue should have been raised by "petition or complaint" rather than by motion and that Russell, rather than her attorney, should have been served with notice of the petition and the date of the hearing. M.R.C.P. 81(d)(5). "[I]n Rule 81 matters, a Rule 81 summons must be issued; otherwise, service is defective." *Clark v. Clark*, 43 So. 3d 496, 499 (¶12) (Miss. Ct. App. 2010). The fact that Russell knew a hearing had been scheduled is irrelevant; "[a]ctual notice does not cure defective process." *Id.*

¶11.    Byrd's argument that Russell waived the issue by failing to raise it in the trial court is more difficult. Appeals courts generally will not consider issues raised for the first time on appeal. *See, e.g., Taylor v. Taylor*, 201 So. 3d 420, 421-22 (¶6) (Miss. 2016). But on the specific issue of a Rule 81 summons, the authorities are less clear. The Mississippi Supreme Court has repeatedly stated that "complete absence of service of process offends due process and cannot be waived." *Stratton v. McKey*, 204 So. 3d 1245, 1248 (¶10) (Miss. 2016) (quoting *Reasor v. Jordan*, 110 So. 3d 307, 317 (¶41) (Miss. 2013) (Pierce, J., dissenting in

5

part from a plurality opinion, with an equally divided court[1])). Nonetheless, our courts have repeatedly found the issue to have been waived when the defendant appears on the day of the hearing and defends the matter on the merits without objection. *See, e.g., Reasor*, 110 So. 3d at 312 (¶17); *Dennis v. Dennis*, 824 So. 2d 604, 611 (¶18) (Miss. 2002); *Chasez v. Chasez*, 935 So. 2d 1058, 1062 (¶12) (Miss. Ct. App. 2005).

¶12.    But in a case where the defendant did not appear at the hearing,[2] this Court held that the issue could not be waived by failure to raise the argument in the trial court. *Serton v. Serton*, 819 So. 2d 15, 20 (¶22) (Miss. Ct. App. 2002).  In fact, this Court found the error reversible even though it was not raised until the defendant's reply brief on appeal. *Id.* at 21 (¶¶24-25).

¶13.    Still, Byrd contends that the issue was waived by Russell's pursuit of the Rule 60(b) motion.  As the dissent notes, there is general language in *Reasor*, *Dennis*, and *Chasez* suggesting that the Rule 81 summons can be waived by appearing and failing to contest service of process.  An example would be the supreme court's particular phrasing in *Reasor*: both the dissent and the plurality agreed that "the right to contest the court's jurisdiction based upon a claimed problem with service may be lost after making an appearance in the case if the issues related to jurisdiction are not raised at the first opportunity." *Reasor*, 110

---

[1] The dissent in that equally divided case would have found that the defendant could not waive service of process under Rule 81, even by appearing at the hearing. *Reasor*, 110 So. 3d at 317 (¶41).

[2] More precisely, the record failed to show that the defendant appeared at the hearing. *Serton*, 819 So. 2d at 17 (¶6).

So. 3d at 311, 317 (¶¶15, 41).

¶14.    There is some confusion here about what constitutes an appearance. Unsurprisingly, it stems from Rule 81, which has been observed to create a "case within a case" in certain matters, most frequently contempt.[3] Rule 81 requires the personal service of a complaint or petition, but this is often done under the original cause number of the underlying action, and the judgment on the Rule 81 issue is generally not regarded as appealable until there is a final judgment on all of the issues in the underlying case. So, while we acknowledge that service under Rule 81 can be waived by an appearance at the hearing and the presentation of a defense on the merits, the relevant question should be whether the defendant "appeared" and defended the specific Rule 81 matter rather than some other issue in the underlying cause. Here, Russell's only appearance on the will construction issue was her filing and pursuit of what the chancellor interpreted as a Rule 60(b) motion for relief from the judgment,[4] where Russell argued that she was not accorded proper notice of the hearing. She did not appear at the hearing on the merits of the Rule 81 matter like the defendants in *Reasor*, *Dennis*, or *Chasez*.

¶15.    *S & M Trucking LLC v. Rogers Oil Co. of Columbia,* 195 So. 3d 217, 223 (¶24) (Miss.

---

[3] *See, e.g., Shavers v. Shavers*, 982 So. 2d 397, 402 (¶25) (Miss. 2008) ("Although contempt proceedings in divorce cases often are filed in the same cause number and proceed with the underlying divorce case, they are held to be separate actions, requiring new and special summons under Mississippi Rules of Civil Procedure 81." (citation omitted)).

[4] For our analysis of this issue, we need not decide whether a Rule 60 motion was proper; the question is whether Russell's pursuit of the Rule 60 motion amounted to an appearance and defense on the merits and thus waived service of process.

7

Ct. App. 2016), is instructive, but the dissent's reliance on it is misplaced. There, we elaborated on the general waiver rule mentioned in *Reasor* and the like, to the effect that waiver results unless "the defendant's first defensive move" "put[s] the plaintiff on notice that the defendant will pursue dismissal based on insufficiency of process." *See id.* But we went on to explain that the "first defensive move" means *defending the case on the merits*. *Id.* at (¶¶24-25). We found no waiver of service of process in *S & M Trucking* because there had been no defense on the merits, and we concluded that the judgment was void. *See id.* at 223-24 (¶25). *S & M Trucking* cited *Schultz v. Buccaneer Inc.*, 850 So. 2d 209, 213 (¶15) (Miss. Ct. App. 2003), where this Court similarly held: "[A] defendant appearing and filing an answer or otherwise proceeding to defend the case *on the merits* in some way—such as participating in hearings or discovery—may not subsequently attempt to assert jurisdictional questions based on claims of defects in service of process." (Emphasis added).

¶16.    Russell's Rule 60(b) motion was not a defense on the merits and thus did not serve to waive her insufficiency of process defense. As this Court explained in *Sanford v. Sanford*, 749 So. 2d 353, 357 (¶16) (Miss. Ct. App. 1999), a Rule 60 motion does not concern the merits of the underlying claim, only whether the movant is entitled to relief from the judgment for one of the limited grounds permitted by the rule. As there was no defense on the merits here, there was no waiver of the defense of insufficiency of process.

¶17.    That still leaves the question of whether this Court should address the issue on appeal. As we said, the record in today's case does not affirmatively show that Russell argued the

8

specific issue of a Rule 81 summons to the trial court. There was no written Rule 60 motion, and at the chancellor's direction, Russell's legal arguments were presented by letter brief rather than at the hearing on her Rule 60 motion. Those briefs are not found in the record. "Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved." *Young v. State*, 891 So. 2d 813, 819 (¶14) (Miss. 2005). The practical effect of Russell's failure to make those briefs part of the record is that this Court must assume the specific Rule 81 argument was, in fact, not made. And this Court will generally not address issues for the first time on appeal. *See, e.g., Fowler v. White*, 85 So. 3d 287, 293 (¶21) (Miss. 2012). Nonetheless, in *Serton*, this Court held that the specific issue of service of a Rule 81 summons, because it is jurisdictional, can be raised for the first time on appeal. *Serton*, 819 So. 2d at 20 (¶22). *Serton* is directly on point, and today's case gives us no reason to disregard that precedent. The issue of notice was immediately presented to the chancery court, the record affirmatively shows that the error occurred, and our determination of error does not depend on factual findings that would have had to be made by the trial court. Consequently, we conclude that relief can be granted on appeal notwithstanding Russell's failure to make the specific argument in the trial court.

¶18.    Russell was not served with a Rule 81 summons on the will construction issue, and she did not waive service by appearing at the will construction hearing or otherwise defending the issue on the merits. Thus, the judgment on the will construction is void, and

we vacate that judgment and the derivative decisions dividing the real property pursuant to the construed will.

### 2. Properly Line Dispute

¶19.　Notwithstanding our decision on the first issue, one other dispute remains on appeal: the chancery court's resolution of a boundary dispute between Russell and the estate. At issue is the construction of a deed from Wylie, decades before her death, to Russell. Specifically, the question is the location of the boundary of Russell's property that was described by calls in the deed as running "east 526 feet more or less to a ditch; thence run[ning] in a northernly direction with the center of said ditch approximately 990 feet, more or less, to the north boundary of [a specified] quarter section . . . ."

¶20.　It was undisputed that nothing resembling a ditch was found 526 feet from the previous marker as described in the deed. Continuing on that course, there were two candidates for the monument: a man-made ditch more than 900 feet along, and a small natural waterway, Martin Creek Branch, at more than 1,200 feet. Around the time she deeded the property to Russell, Wylie also deeded her property on the other side of Martin Creek Branch to Russell's cousin; that deed specifically named Martin Creek Branch as the boundary, though it also referred to it as a "ditch." The disputed property is a strip, approximately five acres, between the land Wylie undisputedly deeded to Russell and the land she deeded to Russell's cousin around the same time.

¶21.　A hearing was held on the issue where numerous witnesses testified. The chancellor,

in a lengthy written judgment, concluded that the manmade ditch was the boundary. She

explained:

> The precise issue is whether the ditch referred to in the subject deed is the ditch constructed by the parties' father many years ago, or the Martin Creek Branch. Our appellate court has explained:
>
>> There are a variety of accepted methods of describing real property. A valid means is by reference to monuments. Natural monuments include rivers, lakes, streams, or trees; artificial monuments include such landmarks as fences, walls, houses, streets, or ditches. Descriptions employing monuments may in part also employ a "metes and bounds" description. That method uses a measurement of length (metes) along certain boundary lines (bounds). Monuments, natural or artificial, can disappear or be altered, so there is an inherent danger in long-time use of monuments. The risk does not invalidate the use. What is needed in any description is accuracy and clarity. Descriptions using monuments are valid even when there is no surveyor's angle and distance description, so-called "courses and distances" descriptions.
>
> [*Moran v. Sims*, 873 So. 2d 1067, 1070 (¶15) (Miss. Ct. App. 2004).]
>
> The common usage of ditch is for "a long narrow hole that is dug along a road, field, etc., and used to hold or move water" or "a long narrow excavation dug in the earth (as for drainage)." Merriam-Webster Dictionary. Notably, this refers to a man-made water course rather than a natural one. It is undisputed that a ditch was constructed by the parties' father, and is readily identifiable. It is also clear that a separate parcel of property was conveyed by the same grantor herein, the decedent, which referred expressly to Martin Creek Branch. It is reasonable to assume that if the grantor had intended Martin Creek Branch as the boundary, then that monument would have been referred to rather than using a generic term for an unnamed man-made drainage trench.
>
> Two surveyors testified. Moore explained that the deed calls for a certain number of feet, and the ditch excavated by the parties' father is the first monument that is reached. He testified it is closer to the footage called for by the description, and results in a parcel closer in size to the amount of acreage

specified in the deed. This ditch is also the first water course reached when following the description in the order and manner set forth therein.

Accordingly, the Court finds the ditch constructed by the parties' father is the ditch referred to as the east boundary of the subject property as set forth in the survey completed by Moore, which was received as Exhibits 14 and 15. The Russells' request for relief on this ground should be and hereby is DENIED.

On appeal, Russell essentially contends that the chancery court lacked substantial evidence to reach the conclusion it did. She also argues that the court erred in excluding certain testimony and erroneously failed to consider other evidence for relevant purposes or to weigh it the way Russell contends it should be weighed.

¶22. We address Russell's contentions relating to evidentiary rulings first. Russell offered the testimony of Doyle Taylor regarding statements made by the decedent/grantor, Wylie. Taylor would have testified that Wylie told him the boundary was the Martin Creek Branch. Russell contends that this testimony, which was obviously hearsay, was evidence of Wylie's "intent," "plan," and "design," and thus admissible under the hearsay exception for "state of mind" evidence, Mississippi Rule of Evidence 803(3). It provides:

> **(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

¶23. Russell asserts that Taylor would have testified that Wylie told him this contemporaneously with the transfer, or some time prior to it; but his proffered testimony does not support this claim. Taylor's testimony is actually either ambiguous as to when the

12

statements were made, or he describes Wylie speaking about her intent in the past tense. Thus, the chancellor acted within her discretion in refusing to admit the proffered testimony as a "statement of memory or belief" regarding the boundary, not admissible under the hearsay exception.

¶24.    Russell also alleges that the chancellor failed to properly weigh her testimony regarding statements her mother made to her around the time of the transfer.  However, when this testimony was offered at trial, Byrd objected, and, in response, Russell's attorney stated that the testimony was offered only for the purpose of showing Russell's own understanding of the boundary line. Irrespective of whether the testimony may have been admissible under Rule 803(3) as evidence of Wylie's intent, the point was conceded that it would not be offered for that purpose.  We cannot say the chancellor committed any error in limiting her consideration of the testimony to the purpose for which it was offered and admitted.

¶25.    Russell also argues that this testimony was admissible under Mississippi Rule of Evidence 803(20), the hearsay exception for reputation evidence relating to boundaries:

> **(20) Reputation Concerning Boundaries or General History.**  A reputation in a community – arising before the controversy – concerning boundaries of land in the community or customs that affect the land, or concerning general historical events important to that community, state, or nation.

But a review of Taylor's testimony indicates that he only testified to his own personal belief and that it was based on what Wylie had told him, apparently in a private conversation.  This was not a statement of reputation at all, much less of a general reputation in the community as would be required to admit the testimony under this rule.  *Coastal States Ltd. v. City of*

13

*Gulfport*, 480 So. 2d 1113, 1115 (Miss. 1984); *see also* 2 *Wigmore on Evidence* § 1584 (1904). There was no abuse of discretion in the exclusion of this testimony.

¶26.    Russell's remaining arguments, although presented as many and varied, are essentially a challenge to the chancellor's ultimate factual findings. An appellate court "will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Hamilton v. Young*, 213 So. 3d 69, 74 (¶11) (Miss. 2017). "The chancellor is charged with weighing the evidence, and [an appellate court] will not reverse her determination absent manifest error or an abuse of discretion." *Heiter v. Heiter ex rel. Sheffield*, 192 So. 3d 992, 995 (¶4) (Miss. 2016).

¶27.    Russell contends that the chancellor applied an erroneous legal standard in weighing the courses and distances specified in the deed in favor of her ultimate conclusion; the chancellor reasoned that the artificial ditch was more likely to be the one specified in the deed because it was significantly closer to the distance the deed specified. The chancellor also reasoned that the artificial ditch was more likely to be the monument specified because using it would lead to an actual acreage (30 acres) that was closer to that specified in the deed (25 acres) than using Martin Creek Branch as the ditch (35 acres). Russell points to authorities like *O'Herrin v. Brooks*, 67 Miss. 266, 274, 6 So. 844, 845 (1889), which provide that calls for monuments prevail over courses and distances, and she implicitly relies on authorities like *Segrest v. Starnes*, 143 So. 3d 628, 632 (¶15) (Miss. Ct. App. 2014), to the effect that deeds are generally construed such that specified boundaries control over

statements of acreage and fractions. But the chancellor did not find that the acreage or the course and distance controlled over the monument; she used those other descriptions to help determine which watercourse was the monument specified in the deed. This was not an abuse of discretion as it is axiomatic that deeds, like contracts, should be read as a whole. *See, e.g., Deason v. Cox*, 527 So. 2d 624, 627 (Miss. 1988). Russell also contends that the chancellor erred in relying on the values given in the deed, as they could have been misprints rather than mismeasurements. While we agree that this is a possibility, when the evidence is subject to more than one reasonable interpretation, it is for the chancellor as the trier of fact to determine which to follow. *Trim v. Trim*, 33 So. 3d 471, 479 (¶20) (Miss. 2010). We see no abuse of discretion in this respect.

¶28.    Turning to the ultimate decision on the boundary line, we admit that Russell presented a strong case for her interpretation of the deed. In addition to showing that Wylie had referred to the Martin Creek Branch as a "ditch," Russell offered testimony from a competing surveyor who concluded that she owned the property at issue, and she also presented Farm Service Agency records indicating that Wylie had apparently implicitly acknowledged Russell's ownership of the disputed land in FSA filings over more than ten years.[5] Nonetheless, it is apparent that substantial evidence supported the chancellor's interpretation. We are therefore without authority to disturb her decision, even if it were not the one this

---

[5] Wylie's farm was registered as consisting of two tracts, one owned by her and one owned by Russell's husband. All or nearly all of the farming on the Russells' tract reported to the FSA appears to have occurred on the disputed property.

15

Court would have made from the same evidence. *Owen v. Owen*, 798 So. 2d 394, 397-98 (¶10) (Miss. 2001).

¶29. Finally, we address Russell's contention, in the alternative, that the case should be remanded for further consideration of her claim to have adversely possessed the property. She alleges that the chancellor "failed to consider" certain evidence she offered on this point, apparently because the chancellor did not mention it in her written discussion of the issue. But, except in certain limited circumstances, "where the chancellor has made no specific findings, we will proceed on the assumption that [s]he resolved all such fact issues in favor of the appellee." *Nichols v. Funderburk*, 883 So. 2d 554, 556 (¶7) (Miss. 2004) (citation omitted); *Bivens v. Mobley*, 724 So. 2d 458, 461 (¶9) (Miss. Ct. App. 1998). It is apparent from the record that the chancellor's decision on this question was supported by substantial evidence; Russell admitted that she did not occupy the property and that she "allowed" Wylie to do what she wanted with it, including to lease it and collect the payments.

¶30. We find no error in the chancellor's resolution of the property line dispute, and so we affirm the judgment as to that issue.

¶31. **AFFIRMED IN PART; VACATED IN PART, AND REMANDED.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND CARLTON, J.**

**WILSON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶32. I would hold that Russell waived any objection to Byrd's failure to serve a Rule 81

16

summons when Russell failed to raise the issue at her first opportunity in the trial court. Accordingly, I respectfully concur in part and dissent in part.[6]

¶33.    I agree with the majority that a Rule 81 summons was required and that Russell did not waive her objection simply because she was generally aware of the hearing date and failed to appear.[7]  However, I would hold that she waived her objection when she thereafter appeared and failed to make any of the arguments that she now raises on appeal.

¶34.    After the chancellor entered an order construing the will, Russell filed a "Motion for Enlargement of Time to File Motion for Reconsideration," which the parties and the judge agreed would be construed as a motion for reconsideration.  A hearing was then held at which Russell testified and was afforded an opportunity to argue any reason why the order construing the will should be set aside or reconsidered.  At the hearing, Russell's attorney stated that there was "a question as to whether or not [Russell] was properly noticed about the hearing" on the motion to construe the will.  Russell testified that she was never advised in person, by phone, or by letter that there was to be a hearing on a motion to construe the will; she knew that a court date had been set for some purpose, but she unilaterally assumed that it was cancelled when her former attorney moved to withdraw from the case.  Russell argued that the order construing the will should be set aside because she failed to appear at

---

[6] I concur in part 2 of the majority opinion regarding the property line dispute.

[7] *See* M.R.C.P. 81(d)(1), (5); *Pearson v. Browning*, 106 So. 3d 845, 850 (¶27) (Miss. Ct. App. 2012) ("Actual notice does not cure defective process." (quoting *Clark v. Clark*, 43 So. 3d 496, 499 (¶12) (Miss. Ct. App. 2010))).

the hearing as a result of her former attorney's withdrawal; she also noted that the order setting the prior hearing gave an incorrect date for the hearing (2/23/2008 rather than 2/23/2009). However, Russell never mentioned Rule 81, a summons, or service of process, and she never argued that the order construing the will was void for lack of jurisdiction or violated due process. The entire trial court record contains no mention of any of these issues. These are all arguments advanced for the first time on appeal.

¶35. While I agree that Russell did not waive her objection by failing to appear at the hearing on the motion to construe the will, I would hold that she waived it when she subsequently appeared and failed to raise the issue at a hearing held for the specific purpose of providing her with an opportunity to present any reason why the order construing the will should be set aside. In cases involving service of process under Rule 4, it is clear that "the right to contest the court's jurisdiction based on some perceived problem with service may yet be lost after making an appearance in the case if the issues related to jurisdiction are not raised at the first opportunity." *S & M Trucking LLC v. Rogers Oil Co. of Columbia*, 195 So. 3d 217, 223 (¶24) (Miss. Ct. App. 2016) (quoting *Schustz v. Buccaneer Inc.*, 850 So. 2d 209, 213 (¶15) (Miss. Ct. App. 2003)). We have held that the same principle applies in Rule 81 proceedings. *Chasez v. Chasez*, 935 So. 2d 1058, 1062 (¶12) (Miss. Ct. App. 2005) (citing *Schustz*, 850 So. 2d at 213 (¶15)). "[T]he defendant's 'first defensive move' must put the plaintiff 'on notice' that the defendant will 'pursue dismissal based on insufficiency of service of process.'" *S & M Trucking*, 195 So. 3d at 223 (¶24) (quoting *Burleson v. Lathem*,

18

968 So. 2d 930, 935 (¶13) (Miss. 2007)) (emphasis omitted).

¶36.    Here, Russell appeared in the trial court but failed to raise the issues of insufficient service of process under Rule 81, personal jurisdiction, or due process. She failed to do so not just at her "first opportunity" but at any point during the next six years of litigation in the chancery court. The first time she raised these issues was in her opening brief on appeal. I would hold that she waived any objection based on insufficient service of process by failing to raise issues at the first opportunity.

¶37.    The majority points out that in *Serton v. Serton*, 819 So. 2d 15, 20 (¶22) (Miss. Ct. App. 2002), which involved a contempt petition that resulted in a lengthy incarceration, this Court held that an objection based on insufficient service of process under Rule 81 was not waived even though it was first raised in a reply brief on appeal. The Court stated that "since the acquisition of process over a respondent is a prerequisite to the court's authority to act in Rule 81(d)(2) matters, and since the question of jurisdiction may be raised for the first time on appeal, we consider the issue." *Id.* If intended as a general statement of law, this quote is inconsistent with the principle that objections to insufficient service of process may be waived. "*Subject matter jurisdiction* may be raised at any time, even for the first time on appeal." *Graves v. Dudley Maples L.P.*, 950 So. 2d 1017, 1022 (¶21) (Miss. 2007) (emphasis added). However, the issue raised in this case does not implicate the chancery court's subject matter jurisdiction. Indeed, in this case, the chancery court possessed not only subject matter jurisdiction to construe the will, *see* Miss. Const. art. 6, § 159(c), but also personal

19

jurisdiction over Russell because she and Byrd jointly filed the petition to probate the will and for letters testamentary and thereby submitted to the chancery court's jurisdiction. *See Powell v. Powell*, 644 So. 2d 269, 274 n.4 (Miss. 1994) (holding that the chancery court continued to have personal jurisdiction over the defendant based on the underlying divorce proceeding, although petitions to modify custody and other "Rule 81 matters, because of their nature, require special notice"). The above quote from *Serton* is inaccurate to the extent that it implies that Rule 81 issues may never be waived.[8]

¶38.    It seems clear that in March of 2009, the requirement of a Rule 81 summons never occurred to Byrd, Russell, their lawyers, or the judge. Byrd filed a "Motion to Construe Will" in an ongoing probate matter that she and Russell jointly initiated. When the motion was filed, Russell was already a party to the case and was represented by counsel. In addition, at the hearing on Russell's motion to reconsider, counsel for both sides repeatedly referred to the pleading as a "motion," not as a petition or anything else. *See Pearson*, 106 So. 3d at 848-49 (¶¶15-18) (explaining that matters listed in Rule 81 are not raised by "motion" but by a "properly served complaint or petition"). Once Russell became aware that an order construing the will had been entered, she was required to raise any objection based on insufficient service of process at the first opportunity. I would hold that the arguments

_____

[8] The appellant in *Serton* remained incarcerated based on the chancery court's finding of contempt and was released as a result of this Court's decision on appeal. *See Serton v. Sollie*, 829 So. 2d 730 (Miss. Ct. App. 2002). The unique facts of that case perhaps serve to explain this Court's finding that he had not waived his objection under Rule 81.

that she made in the trial court—which did not reference Rule 81, a summons, service of process, jurisdiction, or due process—failed to preserve the issue.

¶39. In summary, I would hold that Russell waived her Rule 81 objection as it relates to the motion to construe the will. Accordingly, I respectfully concur in part and dissent in part.

**GRIFFIS, P.J., AND CARLTON, J., JOIN THIS OPINION.**