# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01022-COA

**HOMER W. MAY**                                                          **APPELLANT**

**v.**

**MACY WOMACK MAY**                                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2023 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW THOMPSON |
| ATTORNEY FOR APPELLEE: | COREY DANIEL GIBSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | VACATED - 05/13/2025 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2023-M-01401-COA

**HOMER W. MAY**                                                          **APPELLANT**

**v.**

**MACY WOMACK MAY**                                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2023 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW THOMPSON |
| ATTORNEY FOR APPELLEE: | COREY DANIEL GIBSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 05/13/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND ST. PÉ, JJ.**

**ST. PÉ, J., FOR THE COURT:**

¶1. Homer May was found in contempt of court for his failure to pay child support to his wife, Macy, while their divorce was proceeding. He appealed, arguing that he had never been given proper Rule 81 service for notice that the contempt would be heard. *See* M.R.C.P. 81. While that appeal was pending, Homer moved to have the chancellor recuse from the divorce matter. The chancellor denied the motion, finding it untimely and without merit. Homer appealed the denial of the recusal motion as well, and the two appeals were consolidated. After review, we vacate the chancellor's order of contempt, as the chancery court lacked personal jurisdiction over Homer for purposes of a contempt ruling. But we affirm the chancellor's denial of the motion to recuse.

## FACTS AND PROCEDURAL HISTORY

¶2. Macy May filed a complaint for divorce from her husband Homer in April 2020. Homer filed an answer and a counterclaim, and in September 2020, the chancellor entered an agreed order. We do not know the contents of the agreed order or the parties' complaints because they were not designated as part of the record. In fact, many documents pertinent to the issues on appeal were not designated as part of the record on appeal. Even so, the docket sheet indicates that the parties continued litigating their divorce and support issues over the next few years. Homer filed a motion for contempt against Macy in October 2020, and Macy filed a counterclaim for contempt and a motion for modification the following month. Homer filed a motion seeking "support modification" in January 2021. In February 2021, the chancellor entered an order continuing the case and "resetting for motion for contempt & a

motion for modification" for April 2021. A transcript of the hearing held in February 2021 provides the following:

> THE COURT: [Attorneys,] we're not hearing the motion for contempt that was set for today, are we?
>
> HOMER'S COUNSEL: No, Your Honor, we're going to reserve that for trial. We're going to have to have a longer day than today to get that done.

At the end of the February 2021 hearing, the chancellor noted that they would continue the hearing on modification and contempt until the next trial date.

¶3. The parties agreed via order to set the trial for July 13, 2021. A month before trial, Homer's counsel withdrew, and new counsel—now Homer's appellate counsel—entered an appearance. Trial was continued, and the next several docket entries relate to subpoenas issued, returned, and challenged via motions to quash. In January 2022, Macy filed a motion seeking to set a trial date, which was not noticed for a hearing. In January 2023, Macy moved for a status conference, which was noticed for a hearing; in April 2023, she moved for a trial date again, which was set for June 19, 2023.

¶4. The first document designated in the record on appeal is the April 19, 2023 order granting Macy's motion for a trial setting. The order does not specify the issues to be addressed at trial.

¶5. A transcript of the trial proceedings from June 2023[1] is in the record. The chancellor

---

[1] The transcript reflects the hearing was held on May 19, 2023, an apparent scrivener's error, as all parties agree the hearing at issue was held on June 19, 2023.

opened the hearing by placing on the record remarks that he had made in chambers. He noted that the guardian-ad-litem's report indicated, among other things, that Homer was $18,000 behind on support payments as of May 2022, and the chancellor did not think anything had been paid since. The chancellor noted that Homer's alleged failure to abide by the order was contempt of court as "disrespect to the court system." The chancellor said that he "ought to stop these proceedings and find that the father is in contempt of Court" and then outlined what they would address at the hearing. Neither party had any questions, and the parties recessed to prepare for the trial.

¶6.    When the trial resumed, the parties stipulated to the grounds for divorce and agreed to handle custody and equitable distribution. The chancellor asked how the parties wanted to address Homer's child-support arrearage, and Homer's counsel noted that the arrearage issue was not before the court that day:

| HOMER'S COUNSEL: | There's no pending contempt before this Court with regards to the arrearage. There's also no Rule 81 process seeking a contempt or seeking incarceration. However, it's an equitable factor that the Court can consider. |
|---|---|
| COURT: | The court is going to do more than consider it. The Court is going to put him in jail for contempt. |
| HOMER'S COUNSEL: | With all due respect to Your Honor and this Court, there's not a pending request for incarceration and the Mississippi law requires a notice requirement pursuant to Rule 81 with proper process and notice if incarceration is a consequence. . . . |

4

The chancellor did not respond to counsel's argument, and the hearing continued. Homer admitted that he was in arrears on his child support obligation, but he testified that he had "been in a financial bind." As promised, the chancellor found Homer in contempt for failure to pay nearly $35,000 in child support since the entry of the temporary order and incarcerated him until he was able to pay $10,000 into the chancery court's registry. The chancellor ordered Homer to pay the remaining support balance within thirty days of his release.

¶7. Homer filed a motion for an interlocutory appeal with the Mississippi Supreme Court. While the motion was pending, the chancellor's court administrator emailed a letter to the Supreme Court[2] stating that Homer's counsel was being "highly disrespectful" of the chancellor by filing the interlocutory appeal in a manner associating it with the chancellor's "Judicial Performance problems several years ago." The letter was docketed as a response to Homer's petition for an interlocutory appeal. On November 2, 2023, the Supreme Court found that the contempt order was final and appealable and ordered that Homer's petition for an interlocutory appeal be treated as a notice of appeal instead.

¶8. While the appeal of the contempt order was proceeding, the chancery court still had to address the parties' divorce. But on November 15, 2023, Homer moved for the chancellor to recuse from the divorce matter, citing the court administrator's letter filed in the interlocutory appeal as proof that the chancellor could not be fair and impartial in the divorce

---

[2] *See* M.R.A.P. 5(b) (permitting trial judges to file a statement regarding a petition for an interlocutory appeal).

matter. After a hearing,[3] the chancellor denied the motion to recuse, finding that it was untimely under Mississippi Rule of Civil Procedure 16(A), Uniform Chancery Court Rule 1.11, and Canon 3E(1) of our Code of Judicial Conduct. The chancellor also found that the motion lacked merit, noting that Homer "fails to state a specific instance where the Judge voiced a personal bias or prejudice against him because there is not any bias or prejudice to voice." The chancellor denied Homer's claim that contempt was not an issue for trial, noting that a pretrial order listed contempt as an issue for trial. Homer appealed the denial of this order, which the Supreme Court consolidated with the appeal of the contempt order.

## ANALYSIS

¶9.     Homer's appeals address two issues. In the one involving the contempt proceeding, he argues that the chancellor violated his due process rights by holding a contempt hearing without proper notice and by incarcerating him for contempt without incarceration having been properly pled. In the second, he argues that the chancellor erred by refusing to recuse from the ongoing divorce matter.

### A.     Contempt

¶10.    Homer does not challenge the merits of the chancellor's contempt finding, but he argues that the judgment was void for a lack of personal jurisdiction under Mississippi Rule

---

[3] The transcript of the recusal hearing is not included in the record, but exhibits that were presented at the hearing are in the record. One of the exhibits from the recusal hearing is Docket Entry #39, the pretrial order from April 2021 setting the original matter for trial on June 8, 2021. The contested issues for trial listed on the order are "divorce grounds, property settlement/division, child custody, and contempt of temporary order."

of Civil Procedure 81(d)(5). In contempt matters, we review questions of law de novo, and we must reverse where the chancellor has applied an erroneous legal standard. *See Bolivar v. Bolivar*, 378 So. 3d 433, 438 (¶18) (Miss. Ct. App. 2024). Determining whether the chancery court has jurisdiction is a question of law. *Price v. McBeath*, 989 So. 2d 444, 450 (¶20) (Miss. Ct. App. 2008). "An opposing party's failure to issue a Rule 81 summons may result in the chancery court losing its personal jurisdiction." *Harrison v. Howard*, 356 So. 3d 1232, 1241 (¶25) (Miss. Ct. App. 2023) (citing *Pearson v. Browning*, 106 So. 3d 845, 852 (¶39) (Miss. Ct. App. 2012)); *see also Clark v. Clark*, 43 So. 3d 496, 499 (¶12) (Miss. Ct. App. 2010) ("[I]n Rule 81 matters, a Rule 81 summons must be issued; otherwise, service is defective."). "A judgment is deemed void if the court rendering it lacked jurisdiction." *Clark*, 43 So. 3d at 501 (¶21); *id.* at 502 (¶23) ("Since the [court] lacked personal jurisdiction over [the husband], the divorce is void.").

¶11.    Homer points to this Court's recent holding in *Bolivar*, in which we clarified that Rule 81(d)(5) requires a summons to be issued in "*any* action or matter listed" in Rule 81(d)(1) or (2), including contempt. *Bolivar*, 378 So. 3d at 438 (¶20) (emphasis added). In *Bolivar*, this Court overruled a line of cases "to the extent that they [held] or impl[ied] that a petitioner does not have to serve a new Rule 81 summons for a contempt matter in pending domestic litigation." *Id.* at 439 (¶24). So under Rule 81(d)(5), all contempt actions must have a summons issued and served on the defendant in order for the chancery court to maintain jurisdiction over the matter and the parties. *See id.* at 440 (¶26). An important caveat: the

plain language of Rule 81(b)(5) makes clear that if an action allowed by Rule 81(b)(1) or (2)—such as contempt—"is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent."

¶12.    Applying these tenets to the present case, Macy was required to issue and serve Homer with Rule 81 process for the court to acquire personal jurisdiction over Homer to hear and rule on the contempt matter. If Macy filed an additional contempt motion, it would require a new Rule 81 summons and service. But if the contempt matter heard in June 2023 was considered that day as a result of a continuance, then a new Rule 81 summons would not be required.

¶13.    The answer is not so clear here. For one, Homer failed to designate for our appellate record any portion of the chancery court record prior to the order setting trial for June 19, 2023. So all we have to go by is the docket headings, which may not accurately reflect the documents therein. We note the docket shows that Macy filed two petitions for contempt (Docket Entries #26, #35) before the June 2023 hearing. It does not appear from the docket that a Rule 81 summons was issued or served on Homer after Macy's two contempt petitions. But the docket does show a continuance of contempt matters (Docket Entry #34), and the pretrial order of April 2021 specifically lists contempt as a matter for trial. Other agreed orders of continuance and motions for continuances were filed, which may have addressed the pending contempt matters.

8

¶14. Ultimately, it does not appear that proper Rule 81 service was made on Homer. The scant record we have makes clear that Homer was on notice that the contempt matter would be heard at the June 2023 hearing, but actual notice cannot cure defective process. *See In re Est. of Wylie*, 226 So. 3d 114, 119 (¶11) (Miss. Ct. App. 2017). Although a party may waive its "right to contest the court's jurisdiction based on some perceived problem with service" if the party makes an appearance and fails to raise the "issues related to jurisdiction . . . at the first opportunity," Homer's counsel raised the issue of Rule 81 service at the contempt hearing, so he did not waive the issue. *S&M Trucking LLC v. Rogers Oil Co. of Columbia*, 195 So. 3d 217, 223 (¶24) (Miss. Ct. App. 2016); *see also Wallace v. Wallace*, 309 So. 3d 104, 113 (¶¶38-39) (Miss. Ct. App. 2020) (finding that defendant "waived any objection to the lack of a Rule 81 summons" because she appeared at the contempt hearing and defended the motion on the merits without objecting to the lack of service of process).

¶15. We cannot address Homer's claim that incarceration was not properly pled in Macy's contempt motions because Homer failed to designate them as part of the record. "It is the appellant's duty to see that all matters necessary to his appeal, such as exhibits, witnesses' testimony, and so forth, are included in the record, and he may not complain of his own failure in that regard." *Scott v. Rouse*, 348 So. 3d 345, 349 (¶14) (Miss. Ct. App. 2022) (quoting *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977)). Parties who fail in this duty will find their arguments waived on appeal; accordingly, Homer's argument on this point is procedurally barred.

¶16. Nevertheless, because Homer did not receive proper Rule 81 service before the contempt matter was heard by the chancellor and because he objected to the court's resulting lack of jurisdiction, we have no option but to vacate the chancellor's order finding Homer in contempt.

### B.    Recusal

¶17. Homer moved for the chancellor's recusal, noting both the alleged violation of Homer's due process rights (by incarcerating him without proper Rule 81 service) and the court administrator's letter regarding the interlocutory appeal (which accused Homer's counsel of disrespect). The chancellor denied Homer's motion for recusal, finding it both untimely and without merit.

¶18. Specifically, the chancellor found that because Homer did not file his motion for recusal within thirty days of the complaint being filed, the motion was untimely. The chancellor found that "[t]he [Chancery] Court's response to [Homer's] Petition for Interlocutory Appeal was insufficient to reinstate the thirty day rule found in [Rule] 1.11. . . . It was not until the [Chancery] Court replied to [Homer's] motion for interlocutory appeal that he decided that he needed a new judge." The chancellor also noted that Homer had not shown any bias against him as a party and that he was found in contempt based on the merits. The chancellor said that Homer knew contempt was an issue for trial because it was listed on an agreed pretrial order. We will address both of the chancellor's reasons for denying the motion.

¶19. "A trial judge's recusal decision is left to his 'sound discretion' provided that 'he applies the correct legal standards and is consistent in the application.'" *Watson v. Watson*, 306 So. 3d 800, 806 (¶24) (Miss. Ct. App. 2020) (quoting *Latham v. Latham*, 261 So. 3d 1110, 1112 (¶7) (Miss. 2019)). There is a presumption that "a judge, sworn to administer impartial justice, is qualified and unbiased." *Id.* That presumption may be overcome if the movant presents "evidence of a reasonable doubt" by showing that "a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality." *Id.*

¶20. Rule 1.11(C) of the Uniform Chancery Court Rules states that motions for recusal must "be served on the chancellor who is the subject of the motion within 30 days following notification to the parties of the name of the chancellor assigned to the case; or, *if it is based upon facts which could not reasonably have been known to the filing party within such time*, it shall be served within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted." (Emphasis added).

¶21. While the chancellor was correct that more than thirty days had elapsed since he was assigned Homer's case, Homer's motion to recuse was based, at least in part, on the chancellor's letter regarding his petition for an interlocutory appeal of the contempt petition. Homer filed his petition for an interlocutory appeal of the contempt finding on September 14, 2023. On October 18, 2023, the court's letter responding to Homer's petition was filed. Homer filed his motion to recuse and accompanying affidavit[4] on November 15, 2023,

---

[4] *See* UCCR 1.11(B).

11

highlighting the court's statements in its letter as a perceived "attack" on counsel for his actions "[w]hile zealously representing" Homer.

¶22. Given that Homer's motion was based at least in part on the October 18, 2023 letter, it was based on a fact that could not reasonably have been known to Homer within thirty days of the initial case assignment. The chancellor's ruling that the chancery court's response to the interlocutory appeal was "insufficient to reinstate the thirty day rule" is without basis in the law. Indeed, the letter is so crucial to Homer's motion for recusal that it seems the chancellor's actions during the June 2023 hearing were not enough for Homer to feel as though recusal was warranted. Homer's petition was therefore timely.

¶23. While the chancellor erred in finding the petition untimely, we find that the chancellor did not abuse his discretion in denying the motion on its merits. Homer's motion for recusal relies heavily on the court's October 2023 letter accusing counsel of "highly disrespectful conduct," but it is also based on the chancellor's finding Homer in contempt, which Homer asserts was a violation of his rights. So Homer was seeking the chancellor's recusal both for bias toward him as party and bias toward his counsel.

¶24. Although Homer was not afforded due process in the contempt proceeding, the mere fact that a trial court rules against a party does not rise to the level necessitating recusal. Homer did not dispute at trial and does not dispute on appeal that he violated the chancellor's support order. Had he been properly served, the contempt finding would have been warranted.

¶25.    A review of the transcript reveals the chancellor's irritation with Homer's failure to provide support as ordered, but

> [t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards [a party]. . . . But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Liteky v. United States*, 510 U.S. 540, 550-51 (1994). Homer does not dispute that he was nearly $35,000 behind on his support payments. As a result, the chancellor's frustration with Homer's disobeying the support order appears to have been "necessarily acquired in the course of the proceedings." Homer has not shown that the chancellor's "ill dispos[ition] towards" him was such that a reasonable person, knowing all the circumstances, would have doubts of the chancellor's impartiality. Plus, the chancellor noted his belief that Homer had notice of the contempt matter. While this is an error of law, *see In re Wylie*, 226 So. 3d at 119 (¶11), it does not reveal any bias toward Homer.

¶26.    Nor does the chancellor's Rule 5(b) letter regarding the interlocutory appeal require reversal, even though it stated Homer's counsel was "highly disrespectful." In fact, the Mississippi Supreme Court has noted that "personal animus held by a judge against an attorney does not, by itself, require recusal because it will not generally be found to be a bias against the litigant." *Washington Mut. Fin. Group LLC v. Blackmon*, 925 So. 2d 780, 787-88, 792 (¶¶20, 45) (Miss. 2004). The Supreme Court explained:

> Given the frequent interaction of attorneys and judges involving matters of

13

serious legal, social and economic consequences, it is to be expected that there will from time to time be conflict between them in the course of their professional responsibilities. Judges are often called on to discipline attorneys and to criticize their conduct. Attorneys frequently challenge rulings of the judges. However, tradition and authority do not dictate that each time an attorney perceives the possibility that a judge may not think kindly of him he is entitled to have the judge removed from a case. On the contrary, unless the antagonism is extreme and clearly demonstrated, or unless the animosity so demonstrated is coupled with other prejudicial circumstances, recusal is not mandated.

*Id.* at 788 (¶23).

¶27. The chancellor's finding Homer in contempt, while an error of law, was not without merit and, thus, did not evince a level of bias or prejudice that would cause a reasonable person to question the chancellor's presumed impartiality. Nor does the court's letter in the interlocutory appeal, which was directed at Homer's counsel, show such clear antagonism toward counsel that a reasonable person would question whether the chancellor could be unbiased and impartial toward Homer, the client. We find that the chancellor did not abuse his discretion by denying Homer's motion to recuse.

**CONCLUSION**

¶28. We vacate the chancellor's order finding Homer in contempt, as he was not properly served with Rule 81 process prior to the hearing. We affirm the chancellor's denial of the motion to recuse.

¶29. **APPEAL NO. 2023-CA-01022-COA: VACATED. APPEAL NO. 2023-M-01401-COA: AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**

14

**LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**